■ DENCO et al., Respondents-Appellants, v GENESCO, INC., Appellant-Respondent, et al., Defendants.—Interlocutory judgment and order (one paper), Supreme Court, New York County, entered February 7, 1979, unanimously modified, on the law, to the extent of reversing so much thereof as

creates subclasses of series B and C shareholders and dismisses the complaints as to those subclasses, and otherwise affirmed, with $75 costs and disbursements of this appeal to plaintiff. We are in agreement with the trial court's determination that defendant Genesco, Inc. (Genesco), failed to honor its contractual obligations to exchange debentures for stock and is thus liable to B and C shareholders. However, the trial court erred in creating subclasses among said series B and C shareholders. In the earlier motion for an order pursuant to CPLR 902, permitting the maintenance of this action as a class action, Special Term, in disposing of Genesco's contention that a class action was not maintainable because different shareholders had varying degrees of knowledge regarding the possible suspensions of the exchange privilege, held that such knowledge was not an element to be proved in any cause of action herein and that Genesco's contractual undertakings, "by the express terms of the contracts inure to the benefit of all purchases of the stock involved herein." In reviewing, on appeal, the orders based upon that decision, this court unanimously affirmed for the reasons stated by Special Term (52 AD2d 778). In our view, the holders of class B and C stock, did not, by signing and returning proxies, or by receiving such stock as a result of the settlement of an action, waive or lose their contractual rights to make the exchange. Settle order. Concur—Ross, Lupiano and Carro, JJ.

Birns, J. P., and Silverman, J., concur in a memorandum by Silverman, J., as follows: We agree that all stockholders of each class of stock have the same rights whether or not they signed proxies and in whichever transaction or offer they acquired their stock. As an original matter, we would have grave doubts as to whether holders of subordinated classes of stock have a right to exchange their stock for a higher ranking security, e.g., debentures, after default in the payment of dividends of the same or superior classes of stock, and in the face of a provision of the certificate of incorporation which appears to forbid acquisition of such subordinated stock for value by the corporation in such circumstances. In general, we would suppose that the relative priorities of different classes of securities would necessarily be governed by the certificate of incorporation, and that a holding that subordinated stock may be exchanged for higher ranking securities after default in dividends might negate the whole concept of subordination in the only situation in which it makes a difference. However, the contrary has been determined by a final judgment (rendered after the decision appealed from in the case at bar) of the United States District Court for the Southern District of New York in an action entitled *Camp v Genesco,* brought by the holders of series B subordinated cumulative convertible preference stock. A judgment for $3,000,000 has been entered in favor of plaintiffs in that action and defendant has not appealed. In that case, the court held that the suspension of the right of exchange involved in the present case was a violation of the legal rights of the series B stockholders. As defendant was a defendant in that action, we deem that judgment to constitute collateral estoppel on the issue before us. While it has been said that collateral estoppel does not apply to an "unmixed question of law" *(Matter of Mc-Grath v Gold,* 36 NY2d 406, 411), it does apply to determinations of "mixed fact and law". *(Yates v United States,* 354 US 298, 336.) More broadly, it applies to "a *fact, question* or *right* distinctly adjudged in the original action". *(United States v Moser,* 266 US 236, 242.) And in the seminal case of *Schuylkill Fuel Corp. v Nieberg Realty Corp.* (250 NY 304, 309), Judge Cardozo said: "As often as an attempt is made to enforce the written contract according to its terms, the former judgment will be conclusive as to the meaning of those terms and their effect." That seems to be the situation

in the present case—interpretation of the written instruments according to their terms—and thus, the judgment of the United States District Court is "conclusive as to the meaning of those terms and their effect." Where the parties in the two actions are not identical "New York has adopted the full and fair opportunity test in applying the doctrine of collateral estoppel," i.e., "there must have been a full and fair opportunity to contest the decision now said to be controlling." *(Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71.) In the present case, there is no suggestion that there was not full and fair opportunity to contest the issue. We do not think that the fact that the defendant voluntarily decided not to appeal that judgment means that there was not such a full and fair opportunity to contest. Deeming ourselves bound by the determination of the issue in the Federal court action, we concur with our brethren in the result of this appeal. Settle order.