JOHN RODDEN et al., Doing Business as CREST HALL HEALTH RELATED FACILITY, Appellants, v DAVID .AXELROD, as Commissioner of Health of the State of New York, et al., Respondents. (And Another Related Action.)

Third Department, February 5, 1981

### APPEARANCES OF COUNSEL

*O'Connell & Aronowitz, P. C. (Cornelius D. Murray* and *Robert E. Ganz* of counsel), for appellants.

*Robert Abrams, Attorney-General (Stanley Fishman, Jeremiah Jochnowitz* and *Shirley Adelson Siegel* of counsel), for respondents.

CASEY, J.

The issue presented on this appeal is whether the plaintiffs' causes of action are barred, under the principles of *res judicata* or collateral estoppel, by the final judgment entered in *Matter of Kaye v Whalen* (56 AD2d 111, affd 44 NY2d 754). We conclude that they are not barred and, therefore, reverse Special Term's dismissal of plaintiffs' complaints.

In *Matter of Kaye v Whalen (supra)*, the New York State Health Facilities Association, a not-for-profit incorporated association of nursing homes, and several member facilities sought, on behalf of themselves and all others similarly situated, to invalidate tentative Medicaid reimbursement rates for the calendar year 1976, set in November, 1975, and to compel the Commissioner of Health to establish 1976 rates consistent with the regulations in effect in 1975. Until August, 1975, Medicaid reimbursement rates for nursing homes were set pursuant to the standard contained in subdivision 3 of section 2807 of the Public Health Law, which required that rates be "reasonably related to the costs of efficient production of * * * service". Pursuant to the statute and regulations promulgated thereunder, the commissioner was required to establish new rates before November 1 of each year, to become effective the following January 1 and remain in effect for one year. Effective August 6, 1975, section 2808 was added to the Public Health Law (L 1975, ch 649, § 7; L 1975, ch 650, § 2). It provided that rates for nursing homes "shall not exceed those which would be paid in the normal course of business by a prudent buyer of such supplies or services." It also required the commissioner to promulgate interim regulations for setting the new rates. Apparently unable to promulgate the required interim regulations prior to November 1, 1975, the commissioner established tentative rates in November, 1975, which simply continued the 1975 rates for 1976. In September, 1976, Special Term held that the interim rates were invalid and granted petitioners' application, including their request for class relief. Shortly thereafter, in October, 1976, the commissioner set new rates, retroactive to January 1, 1976, pursuant to regula-

tions published contemporaneously therewith, employing the new standard contained in section 2808 of the Public Health Law.

On appeal, this court held that the commissioner's action in October, 1976 rendered moot the question of whether the interim rates, set in November, 1975, were invalid. It further held that the retroactive rates were valid, rejecting petitioners' claims that the rates were not authorized by statute, that they impaired petitioners' contractual rights, and that they violated provisions of the Social Security Act (US Code, tit 42, § 301 *et seq.*) Also rejected was the contention that there could be no recoupment of any overpayments received under the interim rates. *(Matter of Kaye v Whalen, 56 AD2d 111, supra.)* In concluding, it was noted (p 119) that "[s]ince the petition will be dismissed, it is not necessary to decide if class relief, granted by Special Term, would have been appropriate". The Court of Appeals affirmed in a brief memorandum (44 NY2d 754).

Both plaintiffs in the actions at bar are members of the New York State Health Facilities Association, a petitioner in *Matter of Kaye v Whalen (supra)*, but they were not named party petitioners in that proceeding. The gravamen of plaintiffs' complaints is that, in addition to the November, 1975 interim rates, they received communications in early 1976 from the Department of Health relative to their 1975 rate appeals, which were pending when the interim rates for 1976 were set, increasing the rates for 1976 and indicating that the rates were final. Plaintiffs argue that since they were informed that their interim 1976 rates were final, the commissioner could not thereafter retroactively decrease those rates and seek to recoup overpayments. Accordingly, declaratory and injunctive relief is sought. Plaintiffs moved for a preliminary injunction and defendants cross-moved to dismiss the complaints on the grounds of *res judicata* and collateral estoppel. Special Term denied the motions and granted the cross motions, holding that since in *Matter of Kaye v Whalen (supra)* the Special Term Justice had stated that "[p]etitioners represent, as a class, all nursing homes and health related facilities in the State of New York participating in the Medicaid Pro-

gram", plaintiffs, as nursing home owners and operators, were bound by the final judgment in *Kaye*.

Special Term's reliance on the initial holding in *Kaye (supra)* was clearly misplaced. This court dismissed the petition in that case, expressly noting that there was no need to pass on the propriety of class relief. Thus, the final disposition of the matter which provided no relief to the petitioners, left unresolved the question of whether the case could properly be prosecuted as a class action.

It is conceded that no preliminary order was entered certifying *Kaye* as a class action and describing the class (see CPLR 902, 903). Nor was the necessity of notice of the proceeding to the members of the class considered (see CPLR 904). In short, none of the prerequisites to maintaining *Kaye* as a class action were satisfied. Under these circumstances, plaintiffs cannot be bound by the final judgment in *Kaye* on the theory that they were members of the class affected by that judgment (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.35).

However, the New York State Health Facilities Association had standing as a trade association to represent its members' common interests which were affected by the actions of the Commissioner of Health in setting the Medicaid reimbursement rates challenged in *Kaye* (see *Matter of National Elevator Ind. v State Tax Comm.*, 49 NY2d 538, 545). Thus, the judgment against the association in *Kaye* would, under certain circumstances, operate as a bar against subsequent actions by its members, including plaintiffs herein (see *Weisz v Levitt*, 59 AD2d 1002, 1003). As a general rule, the judgment in *Kaye* will bar not only those issues actually litigated, but also those issues that might have been litigated *(Weisz v Levitt, supra;* see *Matter of Gowan v Tully*, 45 NY2d 32).

A comparison of the pleadings and decisions in *Kaye (supra)* with the pleading herein establishes that the issues raised by plaintiffs were not litigated in *Kaye*, nor are they of such a nature that they might have been litigated. As summarized above, the gravamen of the petition in *Kaye* was that the interim rates for 1976, set in November, 1975, were not authorized by statute or regulation. The relief

sought was to declare the interim rates invalid, require new rates to be set for 1976 pursuant to the regulations in effect in November, 1975 and obtain reimbursement for any underpayments. After Special Term granted judgment in favor of petitioners in *Kaye*, and while the appeal to this court was pending, respondents promulgated new regulations in October, 1976 and simultaneously set new rates, actions which this court found mooted the questions passed on by Special Term (*Matter of Kaye v Whalen*, 56 AD2d, at p 115). Nevertheless, this court proceeded to pass on the validity of respondents' 1976 actions since it appeared that only legal issues were involved, which could be decided on the existing record, and since speedy resolution of the matter was essential for all parties. Respondents' action in October, 1976 occurred long after commencement of the proceeding in *Kaye*, and after Special Term decided the case. Thus, the petition therein contained factual allegations pertaining only to the validity of the November, 1975 interim rates. The complaints herein accept the validity of the interim rates and allege that communications from defendants, received after the interim rates were set but before the October, 1976 actions, rendered the interim rates final, rather than tentative. Plaintiffs contend that this gave rise to some type of contractual obligation that precludes defendants from recouping any overpayments resulting from the retroactive rates set in October, 1976. It is readily apparent, therefore, that the instant case involves not only different legal theories, but also different foundation facts (cf. *Matter of Gowan v Tully*, *supra; Hyman v Hillelson*, 79 AD2d 725).

A judgment in favor of plaintiffs in these actions, precluding defendants from recouping alleged overpayments resulting from the retroactive rates set in October, 1976, would not destroy or impair rights or interests established in *Kaye (supra)*, i.e., the general authority to promulgate the retroactive rates (cf. *Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304). Most importantly, however, the essential factual allegations here, pertaining to communications to plaintiffs from defendants regarding the finality of the interim rates, were irrelevant to the validity of the interim rates, which was the subject of *Kaye* when the

proceeding was commenced. It was not until after Special Term had decided that matter, and the appeal was pending, that issues concerning the validity and effect of the retroactive rates arose. At that point, petitioners could no longer amend or supplement their petition. Thus, there was no opportunity in *Kaye* to have Special Term, this court or the Court of Appeals pass on the issues raised by the allegations in plaintiffs' complaints that defendants' conduct had converted the interim rates into final rates prior to the promulgation of the retroactive rates. Plaintiffs, therefore, should not be barred from now litigating these issues.

The judgments should be modified, on the law, by reversing so much thereof as granted defendants' cross motions to dismiss plaintiffs' complaints, and the cross motions denied, and, as so modified, affirmed, without costs.

KANE, J. P., MAIN, MIKOLL and HERLIHY, JJ., concur.

Judgments modified, on the law, by reversing so much thereof as granted defendants' cross motions to dismiss plaintiffs' complaints, and cross motions denied, and, as so modified, affirmed, without costs.