OPINION OF THE COURT
Norman C. Ryp, J.
A. ISSUE
Should the Empire State entertain multistate plaintiffs as a class act(ion)?
Whether a New York State court should take jurisdiction over a New York corporation’s common stockholders’ class action, if all other CPLR 901 prerequisites and CPLR 902 pragmatic considerations are met, where 48.5% shareholders owning 22% of the shares are nonresidents? Only the totality of factual circumstances, following precertification discovery will tell the full story of this corporate “takeover”!
B. FACTS
Plaintiffs move, under CPLR 902, for certification of this action as a class action upon behalf of 68% of the former *55 common stockholders of Wells Management Corporation, whose shares were bought out by BIS, S. A. on or about January 20, 1978.
This is an action by former shareholders of Wells Management Corporation (Wells), an executive employment agency, to recover compensatory and punitive damages exceeding $1,250,000 for various breaches of fiduciary duty arising from the acceptance of a tender offer by defendant BIS, S. A. (BIS), a Delaware corporation, for the stock of Wells, a publicly traded over-the-counter New York corporation.
It appears that the gravamen of plaintiffs’ complaint is the breach of their fiduciary obligation by Myron Chefetz (Chefetz) and Martin Krull (Krull), the individual defendants, respectively, Wells’ president and chairman of the board, during the takeover by BIS. Between them Chefetz and Krull owned approximately 210,000 shares or 32% of its stock. At the time of BIS’ tender offer there were a grand total of 672,868 outstanding shares of Wells’ stock, of which 552 other shareholders, including plaintiffs (23,750 shares), held the balance of the remaining 463,304 shares, of whom, according to plaintiff, 268 (48.5%) owning 102,540 (22%) Wells’ shares are nonresidents. On or about January 20, 1978, after negotiations during 1977 between the individual defendants and corporate defendant BIS, the latter through its subsidiary, BIS American Corporation — a French corporation, made a tender offer for all of the outstanding stock of Wells at the price of $5 a share, or approximately $3,364,340 for the total tender offer.
C. parties’ contention
In support, plaintiffs allege that, due to Wells’ improving financial condition at the time of the acquisition, Wells was worth substantially more than the tender offer made. Despite this, defendants concluded the acquisition, allegedly receiving unconscionably large executive compensation arrangements of long-term employment and consultation agreements from BIS in exchange for abetting the sale. In reality, plaintiffs allege, these excessive compensation packages, also known as “golden parachutes” and worth a minimum of $1,250,000 were simply vehicles of taking moneys allocated by BIS, to buy the stock of Wells, *56 and payable all to Wells’ shareholders, to divert such funds to the individual defendants. Plaintiffs further allege that such tender offer document itself was deceptive and misleading in that the individual defendants, in collusion with BIS, breached their fiduciary duty to the shareholders by diverting those funds to themselves and by failing to make proper disclosures in the tender offer document.
In opposition, defendants contend that plaintiffs have failed to establish that this is a proper case for CPLR article 9 class action certification or to properly identify the class they seek to represent; that neither plaintiff is a proper class representative since their claims and the defenses thereto are not typical of the class as a whole; and that plaintiffs have failed to establish the merit of their claim.
D. APPLICABLE LAW
(1) CPLR 901
CPLR 901 (added L 1975, ch 207, eff Sept. 1, 1975) sets forth the five prerequisites for a class action, each of which plaintiff has the burden to prove (Scott v Prudential Ins. Co., 80 AD2d 746), which prerequisites are to be liberally construed although, in fact, they have been narrowly applied in New York. (Friar v Vanguard Holding Corp., 78 AD2d 83.)

(a) Numerosity (CPLR 901, subd a, par 1)

A class action is particularly appropriate herein because, while the potential class consists of too many claimants for joinder to be practical, the total potential class is readily definable, limited and manageable. (Beekman v City of New York, 65 AD2d 317.) There are a maximum of 554 class members herein and each can easily be identified from the record list of shareholders and, accordingly, notified. (Reiken v Nationwide Leisure Corp., 75 AD2d 551, 552-553, app dsmd 50 NY2d 1059.)

(b) Common Questions of Law or Fact Predominate (CPLR 901, subd a, par 2)

Defendants’ alleged breach of their fiduciary duty, owed equally to all shareholders, is the predominant, common question of fact and law necessary to satisfy this requirement. (Simon v Cunard Line, 75 AD2d 283, 289.)
*57 (c) Typicality of Claims (CPLR 901, subd a, par 3)
Plaintiffs herein contend defendants breached their fiduciary duty by wrongfully approving subject tender offer, diverting tender offer funds to themselves and failing to properly disclose the facts in the tender offer document. Said claims are clearly typical of all claims that would be asserted by other class members in this class action (Klakis v National Leisure Corp., 73 AD2d 521).

{d) Fair and Adequate Protection of Class Interests (CPLR 901, subd a, par 4)

The fact that the representative plaintiffs may be motivated by self-interest is insufficient reason to deny class action certification. (Stern v Carter, 82 AD2d 321; Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941.) While plaintiffs hold 23,750 shares and clearly will benefit from successful litigation, it does not appear they are suing solely to protect their own interests or acting to the detriment of or in opposition to other proposed class members. Plaintiff Brandon has indicated he will be responsible for all financial obligations incurred, that he is thoroughly familiar with the facts, circumstances and progress of subject litigation and will vigorously pursue the matter until completion. Defendants herein have not disputed Brandon’s contention that he possesses sufficient financial assets to be a representative plaintiff. (King v Club Med, 76 AD2d 123, 128.) In addition, Joseph H. Einstein appears to be a competent attorney, skilled and experienced in class actions, who will ably and professionally represent plaintiffs’ interests herein. Therefore, the plaintiffs herein have satisfied CPLR 901 (subd a, par 4; Mersay v First Republic Corp., 43 FRD 465 [SDNY]).
(e) Superior Method of Fair and Adequate Adjudication {CPLR 901, subd a, par 5)
A class action is appropriate where a large number of shareholders sustain losses, but each owns only a small amount of stock so potential recovery is insufficient to warrant commencing an individual action (Friar v Vanguard Holding Corp., supra; Goldman v Garofalo, 96 Misc 2d 790, mod 71 AD2d 650, affd 50 NY2d 851). Of the 554 shareholders herein, it appears 511 own less than 1,000 *58 shares and 342 own less than 100 shares. Since the potential recovery sought is less than $2 per share, rendering it impractical for the majority of these shareholders to initiate individual actions, subject class action is, in reality, the only method of redress available. Economic reality dictates a class action or none at all. (See Stern v Carter, supra.)
Defendants attack the merits of plaintiffs’ cause of action, arguing that plaintiffs must discharge their burden of demonstrating factually their allegations have merit. However, such an inquiry is limited to whether there appears to be a cause of action for relief neither spurious nor sham (Simon v Cunard Line, 75 AD2d, at p 288). Upon the basis of such limited inquiry the court is satisfied as to the apparent merit of plaintiffs’ claim and that the prerequisites for a class action have been satisfied.
(2) CPLR 902
The threshold requirements for certification as a class action having been met, the court now turns to the pragmatic considerations required by CPLR 902 (subds 1-5, added L 1975, ch 207, eff Sept. 1, 1975).
(a) and (b)
Of these items, CPLR 902 (subds 1, 2) has been considered. (See D [1] [d], [e] above.)
(c)
Considering subdivision 3, the court notes the prior April 22, 1980 dismissal of plaintiffs’ Federal class action suit (Brandon v Chefetz, 79 Civ 2526) by the United States District Court for the Southern District of New York (Stewart, J.). However, that dismissal was without prejudice to institution of a State claim (see order, dated Dec. 11, 1982 [Smith, G. B., J.]). Moreover, United States District Judge Charles E. Stewart did not reach plaintiffs’ motion for class action certification. Thus, that decision does not stand as a legal bar to this court’s consideration of the plaintiffs’ application. (Rodden v Axelrod, 79 AD2d 29.)
(d) and (e) Jurisdiction
CPLR 902 (subds 4, 5) requires a further determination from this court upon the fulcrum issue whether or not it *59 can or should exercise in personam jurisdiction over consenting nonresident plaintiffs in a stockholders’ class action. There are, as yet, no applicable New York State Court of Appeals or Appellate Division decisions upon this specific issue and “unsettled problem” (Gottlieb v March Shipping Passenger Servs., 67 AD2d 879, 880; Simon v Cunard Line, supra).
Distinguished from CPLR 903
(Opt-Out) and (Opt-in) Methods
N.B. Such is distinct from the CPLR 903 “opt-out” procedure (imposes a duty upon nonresidents to affirmatively act to exclude selves to avoid inclusion in a class action judgment) which may conflict with the territorial concept and constitutional procedural due process under its minimum contacts requirement and substantial nexus standard (see Shaffer v Heitner, 433 US 186, 212; Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718, 734). New York case law (Reis v Club Med, 81 AD2d 793; Geelan v Pan Amer. World Airways, 83 AD2d 538, app dsmd 54 NY2d 1025) has also used the “opt-in” system and includes only those proposed plaintiff class members who affirmatively request class inclusion — which usually requires a consent to jurisdiction form to obviate any nonresident jurisdictional problems. The “opt-in” method has been criticized as simply a permissive joinder (CPLR 1002, subd [a]), contrary to the entire concept of class actions (see Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718) which substantially diminishes class size (Dickerson, Class Actions under Article 9 of the CPLR, NYLJ, March 18, 1983, p 1, col 2, at p 3, col 2). Both sidestep and neither directly solves the jurisdictional problem of multistate plaintiffs’ class actions (Katz v NVF Co., 119 Misc 2d 48), unless the action is thoroughly settled (see Denco v Genesco, Inc., 75 AD2d 742, modfg NYLJ, Feb. 22, 1982, p 15, col 2 [Rubin, J.]).
In Katz v NVF Co. (supra), involving a larger class action upon behalf of 3,900 common stockholders, without a precise residential-nonresidential breakdown, with an alleged breach of a merger agreement, this court (per Harold *60 Tompkins, J.), held it had personal jurisdiction over nonresident plaintiffs because (1) the litigation had a substantial nexus to New York; (2) subject stock was traded in New York which provided this forum with a sufficient interest in resolving subject dispute to justify expenditure of the judicial resources of New York courts; (3) no more suitable forum existed; and (4) a large number of potential class members were residents or institutional investors with their principal place of business in New York. (See Katz v NVF Co., supra, and the authorities cited therein; see, also, Miner v Gillette Co., 87 Ill 2d 7, cert dsmd 459 US 86.)
In Katz v NVF Co. (supra), Justice Harold Tompkins, in an apt and thorough review of the national case law and authorities on the jurisdictional issue, noted there was a split of authority as to State court recognition of a national class, with Illinois (Miner v Gillette Co., supra) and Kansas (Shutts v Phillips Petroleum Co., 222 Kan 527) and the modern trend* in the affirmative while New Jersey (Feldman v Bates Mfg. Co., 143 NJ Super 84) and Pennsylvania (Klemow v Time, Inc., 466 Pa 189, cert den 429 US 828) oppose. While in New York the appellate courts, including the Appellate Division, First Department, have recognized but never squarely dealt with this issue. Where the jurisdictional issue has been alluded to and class action denied, it would appear that in all but one case (Tanzer v Turbodyne Corp., 68 AD2d 614), plaintiffs were transient consumers, i.e., cruise or airline passengers (Gottlieb v March Shipping Passenger Servs., supra [cruise passengers — class, number and residences unknown]; Tanzer v Turbo-dyne Corp., supra [stockholders of two corporations with a total class of 1,575, only 234 of whom were New York residents]; Simon v Cunard Line, supra [cruise passengers — total class number uncertain (867-1,658), residences unknown]; Bloom v Cunard Line, 76 AD2d 237 [cruise passengers — net class number, after 633 of 700 settled, of 67 — 8 New York residents and 59 nonresidents; Reis v Club Med, 81 AD2d 793, supra [resort vacationers — total *61 class imprecise and few New York residents], app dsmd 54 NY2d 753; Geelan v Pan Amer. World Airways, supra [airline passengers — total class 2,000 — New York residents unknown but residency not in issue]), and in all cases where the numerical residential-nonresidential class breakdown was known, the overwhelming majority of the prospective class were transient nonresidents (Tanzer v Turbodyne Corp. — 1,031 of 1,200 [83%] and 310 of 375 [81%]; Bloom v Cunard Line — 59 of 67 [88%] as distinct from less than a majority herein by individual [48.5%] or shares [22%]).
E. FINDINGS
In this case, as the parties herein agree that (by individual shareholder) 48.5% (268 of 554) of the proposed class are nonresidents while the majority (51.5% [286 of 554]) are known residents of New York. As noted, according to plaintiff the 48.5% nonresidential shareholders own 102,540 (of 672,868 total) shares or approximately 22%, while the 51.5% majority residential shareholders own approximately 78% (570,348 of 672,868) total shares. While the above mathematical measureability (see Tanzer v Turbodyne Corp., supra), and majority residentiality suggest class certification herein, including nonresidents, other factors supportive of the minimum contacts consistent with procedural due process are required of nonresident plaintiffs in a State class action (see Simon v Cunard Line, 75 AD2d, at p 290; Shaffer v Heitner, 433 US, at p 212; see, also, World-Wide Volkswagen Corp. v Woodson, 444 US 286); depending upon the facts of the case (International Shoe Co. v Washington, 326 US 310, 317) traditional jurisdictional principles flexibly applied (Hanson v Denckla, 357 US 235, 253) may exist. In addition, the doctrine and principles of forum non conveniens, to determine whether a more suitable forum exists, outside of this court, noting whether any or how many nonresidents are in States which take jurisdiction over nonresident plaintiff class members for the just, fair and convenient adjudication of this controversy, must be considered (CPLR 327; Silver v Great Amer. Ins. Co., 29 NY2d 356; Irrigation & Ind. Dev. Corp. v Indag, 37 NY2d 522; Westwood Assoc. v Deluxe Gen., 53 NY2d 618; see, also, Dickerson, Class *62 Actions under Article 9 of the CPLR, NYLJ, March 18, 1982, p 1, col 2).
F. CONCLUSION
This New York court must examine the “totality of factual circumstances”, based upon a fully developed record to determine whether or not it can or should, having sufficient policy interest herein (see Miner v Gillette Co., supra) exercise personal jurisdiction (under the “minimum contacts” test, flexibly applied under procedural due process) over all or a substantial number of class members. In addition, such a fully developed record is necessary to determine whether New York is the most appropriate forum under the doctrine of forum non conveniens. Thus, the parties are directed to continue CPLR article 31 precertification disclosure to specifically ascertain: (1) the exact size of the potential class; (2) the precise number of resident and nonresident class members and the number of shares each owns; (3) whether any potential class members have sued defendants in any other class or nonclass action, and, if so, what if any, was the disposition; (4) the geographic residential locations, distribution and distance from New York of the nonresidents; (5) the number of potential class members and shares owned by individuals, corporate and institutional investors together with their principal places of business; (6) when Wells (in New York) and BIS (in Delaware) were incorporated, the location(s) and duration of their principal offices, headquarters and operations; (7) the residence of the individual defendants, the places or sites of negotiations, execution, delivery and filing of documents in connection with the tender offer; (8) and to the extent feasible the number of nonresidents who would submit to this court’s jurisdiction to participate in subject class action or be subject to an equal or more appropriate jurisdiction. (Reis v Club Med, supra; Smith v Atlas Int. Tours, 80 AD2d 762; see, also, Simon v Cunard Line, supra; Klakis v National Leisure Corp., 73 AD2d 521, supra; Spatz v Wide World Travel Serv., 70 AD2d 835; Gottlieb v March Shipping Passenger Servs., supra.)
Accordingly, plaintiffs’ CPLR article 9 motion for class action certification is denied without prejudice and with leave to renew upon compliance with the foregoing, follow *63 ing completion of CPLR article 31 pretrial discovery, as set forth hereinabove.

 See, i.e., Note, Multistate Plaintiff Class Actions: Jurisdiction and Certification, 92 Harv L Rev 718; Report, Committee on Consumer Affairs, 38 Record of Assn of Bar of City of NY, No. 1, Jan.-Feb., 1983; Dickerson, Class Actions under Article 9 of the CPLR, NYU, March 18, 1983, p 1, col 2.