ARTHUR BRANDON et al., Respondents-Appellants, v MYRON CHEFETZ et al., Appellants-Respondents.

First Department, January 31, 1985

## APPEARANCES OF COUNSEL

*Martin G. Bunin* of counsel (*Joel M. Wolosky* with him on the brief; *Parker Chapin Flattau & Klimpl,* attorneys), for appellants-respondents.

*Joseph H. Einstein* of counsel (*Kassel, Neuwirth & Geiger* and *Snow, Becker, Klaris, Krauss & Kroll,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

Asch, J.

This action raises threshold issues as to whether the court should certify a class action and, if so, whether further discovery is necessary before such certification. Other questions presented are whether plaintiffs are proper class representatives and whether the plaintiffs adequately defined the composition of the proposed class at Special Term.

This action, commenced in December of 1980, arose out of a January, 1978 tender offer made by defendant BIS, S.A., a French corporation, for approximately 650,000 shares of Wells Management Corporation, a New York corporation. The corporation, Wells, is not a defendant in this action. Its former president, Chefetz, and former chairman, Krull, who together owned over 32% of the shares of Wells, are. Plaintiffs Brandon and Sippel are former shareholders of Wells who tendered their approximately 24,000 shares in response to the tender offer.

The complaint, in a single cause of action, alleges, in substance, that Chefetz and Krull dominated and controlled the affairs of the corporation; that in March of 1977, BIS, S.A., indicated an interest in purchasing all of the shares of Wells at a price of $5 per share, amounting to an aggregate price of

$3,250,000; that due to a 400% increase in the profit of Wells for the fiscal year ending March 31, 1977 and an increase in the market value of the stock from $1 to $4.75 per share by December of 1977, BIS increased its total purchase price to $4,500,000 or about $6.92 per share, but that the increment in price was not offered to all shareholders of Wells; that defendants BIS, S.A., and BIS America Corp. agreed with defendants Chefetz and Krull that the excess amount, some $1,250,000, would be diverted to the individual defendants through the vehicle of long-term compensation agreements providing them with marked increases in salary over the following six years with no service required of either in the last three years of the agreement. This, in effect, gave Chefetz and Krull $10.33 per share, while all other shareholders received only $5 per share. Plaintiffs contend that the arrangement was a transfer of the value of the stock from the shareholders to the individual defendants and was a breach of their fiduciary duty and unjust enrichment on their part.

The complaint alleges that outsider shareholders were further induced to accept the tender offer as a result of deceptive statements and material omissions from the solicitation materials, which failed to disclose the prior compensation paid to the individual defendants which would have afforded the shareholders a marked increase in their compensation; and that BIS' offer was made contingent by it upon reaching special arrangements with top management of Wells rewarding them with future employment and contracts for consultation services, implying contrary to fact, that BIS insisted upon this arrangement when, actually, the individual defendants insisted on these "personal deals".

It also claims that the written tender offer material failed to disclose the individual defendants' awareness of projected earnings for the fiscal year ending March 31, 1978, which, in fact, was $1.13 per share.

The complaint asserts that this lack of full disclosure constituted a breach of fiduciary duty to treat outside shareholders fairly. No allegation of reliance upon the accuracy of the written tender offer is included.

This action was commenced in December, 1980. This was after plaintiffs' similar Federal court action was dismissed for failing to state any actionable claim under Federal securities law, without prejudice to a State claim. District Judge Stewart of the Southern District of New York found that plaintiffs failed to meet the pleading requirements of the Federal Rules of Civil

Procedure, a defect not cured by plaintiffs' evidentiary supplements. The Federal fraud-nondisclosure claims were found insufficient on the grounds that the written tender offer did disclose the individual defendants' entry into employment, consultation and noncompetition agreements and the amounts of their compensation, and shareholders were not entitled to any particular characterization of the individual defendants' motivation in the transactions. On a prior appeal to this court, denial of defendants' motion to dismiss this State action on grounds of *res judicata* and collateral estoppel was affirmed without opinion (*Brandon v Chefetz*, 88 AD2d 795).

In June, 1982, plaintiffs moved for class action certification, supported by the affidavit of their attorney. Defendants opposed the motion primarily on the basis that plaintiffs were in special positions, rendering their claims atypical and their representation of the proposed class inadequate. Relying upon Arthur Brandon's deposition, it was argued that he was familiar with the operations of Wells Management, was aware of the compensation arrangements for the individual defendants independently of, as well as on the basis of, the written tender offer and knew there were certain omissions in the written tender offer. Further, it was alleged that plaintiff Sippel both purchased and sold Wells stock pursuant to the tender offer solely upon the advice of his brother-in-law, Arthur Barnett, a director of Wells, had never read the written tender offer or any pleadings in the Federal action and had not consulted with plaintiff's attorneys in this action until one week prior to his deposition. Defendants further assert that plaintiff Brandon admitted in his deposition that he was a friend of Barnett and his personal attorney was Melvin Paradise, both of whom were directors of Wells, who had approved the tender offer. Barnett also had secured a one-year employment agreement for himself at a salary of $55,000 from defendant BIS. Curiously, neither Barnett nor Paradise were joined as defendants herein.

Special Term denied the motion without prejudice to renewal upon completion of further discovery directed to the issue of asserting jurisdiction over nonresident shareholders of Wells Management (121 Misc 2d 54). However, the court found that the proposed class did meet the requirements of CPLR 901 (subd a). Plaintiff's counsel's showing was found to be sufficient to demonstrate that the class was so numerous that joinder of all members was impracticable.

The existence of sufficient common questions of law and fact was based upon a finding that Chefetz' and Krull's breaches of

fiduciary duty were the prevalent issue in the case. The named plaintiffs' claims were found typical, without any discussion of their individual situations. They were found to be able to fairly and adequately protect the class based upon Brandon's financial resources and intent to vigorously pursue the action and their retention of competent counsel. The court found plaintiffs' self-interested motivation was no bar to representation where the named plaintiffs were not suing solely to protect their own interests and were not acting to the detriment of the other class members.

In considering the desirability of concentrating litigation of these claims in a New York forum and the difficulties likely to be encountered in the management of the action as a class action under CPLR 902, the court took up the problem of asserting jurisdiction over nonresident members of the class. It found it advisable for the parties to conduct further discovery so as to determine, *inter alia,* whether New York was the most suitable forum for such an expansive class action.

Plaintiffs moved for reargument and reconsideration, producing the stock list and giving detailed statistical analysis of it in an attempt to persuade the court that further discovery was unnecessary. Plaintiffs' attorney also stated that no other shareholders had commenced another action involving this matter; that the individual defendants resided in New York at the time of the transaction, with Krull having moved to California since that time; and that Chefetz' deposition revealed that most negotiations occurred in New York, with some discussions in France, and that documents were executed and delivered in both New York and Paris. No other jurisdiction had more than 66 resident shareholders owning more than approximately 45,000 shares (California). Defendants opposed and cross-moved to reargue the initial decision's finding that named plaintiffs' claims were typical and that named plaintiffs would adequately protect the class.

In the order entered March 28, 1984, Special Term denied the motions, both without prejudice to renewal upon complete compliance with the court's prior order directing further discovery. The court granted Barnett's motion to intervene as an additional party plaintiff. Subsequently, in the order entered April 3, 1984, Special Term *sua sponte* amended its prior orders pursuant to CPLR 2001 so as to expand the scope of pre-class certification discovery to include the precise nature and size of the class, including any subclasses, and the factual basis for the claim of breaches of fiduciary duties and obligations.

Defendants' attempt to raise issues of knowledge and reliance as to Brandon and of lack of knowledge as to Sippel are misplaced. The gravamen of the complaint here is that defendants Chefetz and Krull breached their fiduciary duties to all of the other shareholders of Wells by misappropriating a part of the price of Wells which should have gone to all shareholders and transferring it to themselves. The BIS defendants allegedly knew of, participated in, and aided and abetted that breach.

That breach of fiduciary duty impacted on each and every shareholder, knowledge notwithstanding. Even if we assume that the shareholders were fully aware of this transfer of value, the named plaintiffs assert they are nonetheless entitled to recover their losses. Once the breach of fiduciary duty was under way, as a practical matter the shareholders were powerless to stop it, even if some of them may have realized what was occurring.

To fail to tender the stock would have resulted in a shareholder being locked into a minuscule position in a private corporation whose stock was no longer traded. The shareholders lacked appraisal remedies since this was not a merger. Shareholder approval of the transaction was not required. Additionally, as the dismissal of the prior Federal action indicates, an injunction request would have been unavailing. All the members of the class had no practical alternative and were forced to proceed with the transaction. In such a situation, a class action was certified in *Friar v Vanguard Holding Corp.* (78 AD2d 83).

Where other viable remedies do not exist, the courts have been reluctant to foreclose remedies on technical claims. For example, in *Schlick v Penn-Dixie Cement Corp.* (507 F2d 374, cert den 421 US 976), the court permitted shareholders to sue for damages resulting from a merger consummated at an allegedly improperly low price, even though the defendant acquiring corporation had sufficient stock to complete the merger without the votes.

In cases involving omissions, especially where open market transactions are involved, reliance is generally presumed to flow from a finding of materiality. The requirement of proving individual reliance in cases involving omissions has been overlooked. In *Affiliated Ute Citizens v United States* (406 US 128, 153-154), the Supreme Court held: "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in

the making of this decision * * * This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact."

The question of reliance is, in a case of this sort, at best a matter of defense to be interposed with respect to individual claims after there has been a determination of liability. The presence of an issue as to reliance does not prevent certification at this time. As was said by the Second Department: "In view of the purposes to be served by the class action device and the ability to reverse or revise the status, we agree that 'the interests of justice require that in a doubtful case * * * any error, if there is to be one, should be committed in favor of allowing the class action' (*Esplin v Hirschi*, 402 F2d 94, 101, *supra*)" (*Friar v Vanguard Holding, supra*, at p 100). Also, inquiry on a motion for class action certification vis-à-vis the merits is limited to a determination as to whether on the surface there appears to be a cause of action which is not a sham (see *Simon v Cunard Line*, 75 AD2d 283).

■ Special Term itself noted, and we agree, that "[u]pon the basis of such a limited inquiry into the record presented here the Court is satisfied as to the apparent merit of plaintiffs' claim and that, overall, the prerequisites for a class action has been satisfied" (121 Misc 2d 54, 58, *supra*).

In his scholarly and persuasive opinion in *Friar v Vanguard Holding* (*supra*), Justice Lazer stated that the criteria for class certification

"should be broadly construed not only because of the general command for liberal construction of all CPLR sections (see CPLR 104), but also because it is apparent that the Legislature intended article 9 to be a liberal substitute for the narrow class action legislation which preceded it * * *

"The relatively minor results flowing from article 9 have been viewed by commentators as resulting from judicial failure to give the statute its intended effect (Class Actions in New York: Recovery for Personal Injury in Mass Tort Cases, 30 Syr L Rev 1187, 1209) and from the 'cautious if not hostile' approach to the article (Siegel, New York Practice, 1979-1980 Pocket Part, p 29)." (*Friar v Vanguard Holding, supra*, at pp 91-92.)

CPLR article 9 is modeled on rule 23 of the Federal Rules of Civil Procedure (in US Code, tit 28, Appendix). The policy of this rule is to favor the maintenance of class actions and for a liberal interpretation.

"That policy is especially strong in instances where denial of class action status would effectively terminate further litigation

(*Helfand v Cenco, Inc.,* 80 FRD 1, 5; *King v Kansas City So. Inds., supra;* cf. *Zahn v International Paper Co.,* 469 F2d 1033, 1035, affd 414 US 291), even to the extent that a class should be permitted to go forward if it 'would clear up a goodly proportion of what appears to be the overall dispute' (Landers, of Legalized Blackmail and Legalized Theft: Consumer Class Actions and the Substance-Procedure Dilemma, 47 S Cal L Rev 842, 862; see, e.g., *Kemp v Birmingham News Co.,* 608 F2d 1049; *Green v Wolf Corp.,* 406 F2d 291, cert den 395 US 977; *Dubose v Harris,* 434 F Supp 227; *Lamb v United Security Life Co.,* 59 FRD 25; *Rockler & Co. v Graphic Enterprises,* 52 FRD 335). The rationale for the expansive Federal attitude lies in two distinct theories — 'therapeutic benefits' (McCall, Due Process and Consumer Protection: Concepts and Realities in Procedure and Substance-Class Action Issues, 25 Hastings LJ 1351; Hornstein, Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards, 69 Harv L Rev 658, 662-663; see, e.g., *Esplin v Hirschi,* 402 F2d 94, 101, cert den 394 US 928; *Green v Wolf Corp., supra,* p 299; *Berland v Mack,* 48 FRD 121, 125; *Dolgow v Anderson,* 43 FRD 472, 485-488) and due process (see *Boddie v Connecticut,* 401 US 371). Therapeutic benefits are premised on the concept of collateral public benefits flowing from use of the remedy. The class action is seen as a means of inducing socially and ethically responsible behavior on the part of large and wealthy institutions which will be deterred from carrying out policies or engaging in activities harmful to large numbers of individuals. Absent the class action lawsuit, the theory goes, these institutions will be permitted to operate virtually unchecked and continue to engage in 'legalized theft' which is perpetuated because the injured potential plaintiffs frequently are damaged in a small sum (often less than $100) since, realistically speaking, our legal system inhibits the bringing of suits based upon small claims (*Escott v Barchris Constr. Corp.,* 340 F2d 731; *Weeks v Bareco Oil Co.,* 125 F2d 84, 88-90; *Matter of Antibiotic Antitrust Actions,* 333 F Supp 267, 278, 282-283).

"The due process view is founded on the notion that the class action mechanism affords many individuals a quasi-constitutional right to litigate — to participate meaningfully in the legal process — which they otherwise would not have. As the Supreme Court has noted: 'Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.' (*Hawaii v Standard Oil Co.,* 405 US 251, 266.) By construing the availability of class action relief narrowly, the

judiciary is seen as denying access to the courts to thousands of individuals whose minimal damages are greatly outweighed by the prohibitive costs involved in prosecuting a lawsuit against a wealthy opponent (see, e.g., *Welmaker v Grant Co.,* 365 F Supp 531; *Steinmetz v Bache & Co.,* 71 FRD 202; *Kesler v Hynes & Howes Real Estate,* 66 FRD 43; see, also, Memorandum of Governor Carey, NY Legis Ann, 1975, p 426)." (*Friar v Vanguard Holding, supra,* pp 93-95.)

Defendants contend that certification should be denied because Brandon will not fairly and adequately protect all class members. This contention is based upon the fact that certain individuals were not named as defendants and that Brandon has a "personal interest" in the case.

The decision not to join Barnett and Paradise as defendants here was made by counsel and appears to be justified by a number of practical considerations. As to Barnett, he was given a one-year employment contract at a salary of $55,000. He received nowhere near the benefits paid to Chefetz and Krull, who obtained three years of compensation without the necessity of working, plus high compensation increases. Moreover, Barnett has been cooperating in the prosecution of the action.

Having suggested that Brandon should not represent the class because he knows too much, defendants assert Sippel should be disqualified because he knows too little.

Almost all of the matters regarding which Sippel testified that he lacked knowledge raised issues of law or issues of law and fact. Sippel testified at his deposition that the size of the class "was over 400, 400 or 500"; that he had reviewed the complaint in the prior Federal action and in this action; that he had read the tender offer; that he had "no choice" at the time with respect to tendering his stock; and that prior to institution of suit, Brandon had called him and they had discussed the impropriety of what had occurred.

Obviously, in a sophisticated commercial case of this nature involving breaches of fiduciary duty and nondisclosure, it is not reasonable to expect that a layman such as Sippel would have detailed knowledge of the matters at issue. He has a general awareness of the claims and is certainly qualified to act as a class representative (see *Surowitz v Hilton Hotels Corp.,* 383 US 363, 372-374). Finally, with respect to Sippel, plaintiffs admit he has an agreement with Brandon whereby Brandon will bear all costs and expenses of the litigation. Certification has been granted where a responsible third party has agreed to bear the costs for plaintiff (*Brame v Ray Bills Fin. Corp.,* 85 FRD 568).

■ There is nothing to suggest that plaintiffs cannot or will not fully, fairly and adequately represent the class. In fact, absent the present plaintiffs, it does not appear that *any* class action would be undertaken herein. Accordingly, as Special Term held, plaintiffs met the requirements of CPLR 901 (subd a).

■ However, Special Term erred when it denied certification pending further discovery concerning, *inter alia,* possible nonresident members of the class.

In the case at bar, there are 552 class members who owned 463,000 shares. Nonresidents owned only 102,540 shares or 22% of the shares comprising the class and numbering 268 shareholders. At the very least in the case at bar, certification should have been granted by Special Term with respect to the substantial number of New York residents. With respect to the nonresidents, it has been said:

"In the conventional class action — a suit brought against individual defendants on behalf of a large number of plaintiffs — the extent to which the constitutional procedural due process requirements of personal jurisdiction and prejudgment notice apply to absent class plaintiffs is unsettled. The Supreme Court has denied or dismissed certiorari on the issue of personal jurisdiction, and it has not decided whether prejudgment notice to absent class members is constitutionally required.

"Opinions vary on the constitutional necessity of personal jurisdiction over absent members of a plaintiff class" (Jurisdiction and Notice in Class Actions: "Playing Fair" with National Classes, 132 U of Pa L Rev 1487, 1490).

Upon remand, the Supreme Court can determine the appropriate notice to be given members of the class (see discussion in *Katz v NVF Co.,* 100 AD2d 470, 474-476).

As in *Friar v Vanguard Holding* (*supra,* p 100), "we observe that one of the strengths of CPLR article 9 is its flexibility. A decision granting class action status is not immutable and if later events indicate that the decision should be reversed, altered or amended, requisite relief is authorized".

Accordingly, the appeal from the order of the Supreme Court, New York County (Ryp, J.), entered October 31, 1983, which, *inter alia,* denied plaintiffs' motion for class action certification with leave to renew said motion upon the completion of additional discovery, should be dismissed without costs, as superseded by the order of March 28, 1984. The order of the Supreme Court, New York County (Ryp, J.), entered March 28, 1984,

should be modified, on the law and facts, and in the exercise of discretion, to the extent of treating plaintiffs' motion for reargument and reconsideration as one for renewal, granting renewal, and upon such renewal granting plaintiffs' motion for class action certification and remanding for further proceedings, and otherwise affirmed, without costs. The order of the Supreme Court, New York County (Ryp, J.), entered April 3, 1984, which, *inter alia,* amended, *sua sponte,* the two prior orders so as to expand pre-class certification discovery, should be reversed, on the law and facts, in the exercise of discretion, and vacated, without costs.

SANDLER, J. P., SULLIVAN, BLOOM and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on March 28, 1984, unanimously modified, on the law and facts, and in the exercise of discretion, to the extent of treating plaintiffs' motion for reargument and reconsideration as one for renewal, granting renewal, and upon such renewal, granting plaintiffs' motion for class action certification and remanding for further proceedings, and otherwise affirmed, without costs and without disbursements, and the order of said court, entered on April 3, 1984, is unanimously reversed, on the law and facts and in the exercise of discretion, and vacated, without costs and without disbursements. The appeal from the order of said court entered on October 31, 1983, is unanimously dismissed as having been superseded by the order entered on March 28, 1984, without costs and without disbursements.