In the Matter of COLT INDUSTRIES SHAREHOLDER LITIGATION. KAREN WOODROW et al., Respondents, v COLT INDUSTRIES, INC., et al., Respondents. JAMES S. MERRITT COMPANY, Appellant.

First Department, April 3, 1990

### APPEARANCES OF COUNSEL

*Robert L. Beerman* of counsel *(Charles W. German, W. Perry Brandt* and *John J. Miller* with him on the brief; *Beerman & Wadler,* and *Stinson, Mag & Fizzell,* attorneys), for appellant.

*Seth M. Schwartz* of counsel *(Skadden, Arps, Slate, Meagher & Flom,* attorneys), for respondents.

### OPINION OF THE COURT

Ross, J.

The primary issue to be resolved on this appeal is under what circumstances can an out-of-State resident, who has no contacts with New York State, opt out of a New York class action which seeks equitable and monetary relief.

Colt Industries, Inc. (Colt) is a Pennsylvania corporation, with offices located in New York County, and same is engaged in the business of manufacturing firearms and parts for machines, jet engines and automobiles.

In October 1986, Colt, with the advice and assistance of Morgan, Stanley & Co. Incorporated (Morgan Stanley), which, *inter alia,* was engaged in the investment banking business, undertook a major recapitalization, which resulted in Colt incurring over $1.5 billion in debt, and reducing its equity capital, by the repurchase of over 30 million shares of Colt's outstanding common stock from public shareholders, for $85 per share and one new share.

On or about January 29, 1988, Morgan Stanley informed Colt that it desired to formulate a proposal to acquire Colt. As a result of that interest, a special committee was formed by Colt's seven member board of directors, which consisted of the four outside or nonmanagement directors, to negotiate with Morgan Stanley. Those negotiations resulted in the special committee, upon the advice of Colt's investment advisor, the First Boston Corporation, recommending the approval of a merger transaction with Morgan Stanley.

In substance, the terms of the March 9, 1988 agreement and plan of merger provided that an affiliate of Morgan Stanley, Colt Holdings, Inc. (Holdings), which had been created solely for that purpose, was to make a tender offer to purchase each outstanding Colt share of common stock for $17, and that was to be followed by the merger. After the merger, all the remaining Colt shareholders of common stock would receive the same $17 per share, mentioned *supra*.

On or about March 16, 1988, the tender offer of Holdings was publicly announced and, as of that date, Colt had approximately 32 million shares of common stock outstanding and had approximately 16,300 shareholders of record. Further, at that time, Colt common stock was traded on the New York, Midwest, and Pacific stock exchanges.

Shortly after that announcement, owners of Colt common stock (plaintiffs) commenced 15 separate class actions against Colt and others (defendants) in State courts in New York and Pennsylvania. Subsequently, those actions were consolidated for all purposes in the Supreme Court, New York County, under the caption: *In re Colt Industries Shareholder Litigation.*

Thereafter, counsel for plaintiffs served and filed a first amended consolidated class action complaint which sought equitable and monetary relief. This consolidated complaint alleged, *inter alia,* that the defendants had breached their fiduciary duty, by seeking to benefit themselves financially, as result of the merger at the expense of the plaintiff class, the consideration of $17 per share contained in the tender offer of Holdings was grossly inadequate, and the Colt board of directors had improperly failed to seek higher merger bids.

Following the joinder of issue, the parties' counsel agreed to an expedited discovery schedule. While that discovery was underway, and before the date on which it was contemplated that a preliminary hearing to enjoin the merger would be held, the parties executed a memorandum of understanding (Memorandum), dated April 11, 1988, to settle the consolidated class action. By order, dated April 12, 1988, the IAS court granted the parties' application to certify the consolidated class action for settlement purposes.

Less than a month later, the parties replaced the Memorandum with an executed document, dated April 29, 1988, which was entitled: stipulation and agreement of compromise and settlement (Settlement Agreement).

The terms of the Settlement Agreement provided, *inter alia,* as follows: (1) Holdings agreed to reduce, from $12 million to $10 million, the maximum amount of expenses, which same would be entitled to receive as reimbursement, under the merger agreement, (2) defendants agreed not to oppose plaintiffs' counsel's application to the court for an award of $425,000 for fees and expenses, which would be paid by Holdings, and (3) plaintiffs agreed to dismiss the consolidated class action with prejudice, release all claims which arose out of the transaction, such as those concerning the Colt recapitalization and merger, and which were alleged in the consolidated complaint, other than appraisal right claims under the Pennsylvania Business Corporation Law. Thereafter, pursuant to CPLR article 9, the parties submitted the Settlement Agreement to the court for approval.

By amended order dated May 10, 1988, the IAS court, *inter alia,* defined the subject class as all shareholders of Colt's common stock on or after March 1, 1988, scheduled for June 15, 1988 a CPLR 908 hearing to determine the fairness of the Settlement Agreement, stated "all members of the Class will be bound by any judgment in this action and shall not be excluded from the Class", and approved the form, content, and method of notice to the class. Pursuant to that order, such notice, which was entitled: notice of pendency of action, class action determination, proposed settlement of class action and settlement hearing, was published on May 17, 1988 in the national editions of the Wall Street Journal and New York Times.

The James S. Merritt Company (Merritt) is a Missouri corporation, and as of March 1988, it owned 62,000 shares of Colt common stock. Sometime after the public announcement of Holdings' tender offer for Colt common stock, Merritt learned that a class action had been filed in the IAS court, which was in the process of being settled. Subsequently, Merritt, which is not a New York resident, with no New York contacts, and which had not participated in any way in the class actions, which resulted in the consolidated class action, sent a letter dated May 27, 1988 to the IAS court, which requested that court to exclude Merritt from the subject class action.

On June 9, 1988, Merritt commenced a separate action against Colt and others (defendants) to recover damages in the United States District Court for the Western District of Mis-

souri, Western Division (Federal action). This Federal action complaint alleges, in substance, that the defendants breached their fiduciary duty to Colt shareholders, by their conduct in arranging the recapitalization, tender offer, and merger. At this time, the Merritt Federal action is still pending.

Prior to the IAS court hearing on the fairness of the Settlement Agreement, as a result of the tender offer, Holdings had obtained control of Colt. Therefore, on June 10, 1988, Colt shareholders approved the merger.

On June 15, 1988, after a hearing, at which Merritt did not appear, the IAS court, *inter alia,* approved the Settlement Agreement, and denied Merritt's request to be excluded from it.

Thereafter, orders and judgments were entered on June 16, 17, and 21, 1988, which carried into effect the IAS court decision of June 15th, and Merritt (appellant) appeals from so much of those orders and judgments as denied its request to be excluded from the consolidated class action, binds it to the terms of the Settlement Agreement, and precludes it from asserting its own damage claims against the defendants and others, which arose from the merger transaction.

Although the use of the class action device is governed by statute *(see,* CPLR art 9) in this State, the class action had its origins in "English Chancery practice as far back as the 17th century" (Homburger, *Private Suits in the Public Interest in the United States of America,* 23 Buffalo L Rev 343, 347 [1974]). Equity invented the class actions "to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable" *(Hansberry v Lee,* 311 US 32, 41 [1940]).

In 1975, when then Governor Hugh L. Carey signed the present class action statute (art 9) into law, he stated that it was designed "to cope with contemporary problems" *(see,* 1975 McKinney's Session Laws of NY, at 1748).

Our examination of CPLR article 9 indicates that it is very similar to rule 23 of the Federal Rules of Civil Procedure which governs the bringing of class actions in the Federal court system, and we have said "[t]he policy of * * * rule [23] is to favor the maintenance of class actions and for a liberal interpretation" *(Brandon v Chefetz,* 106 AD2d 162, 168 [1st Dept 1985]). Also, appellate courts in this State have repeatedly stated that the provisions of the class action statute

should be liberally construed by the courts in order to carry out the legislative intent *(Brandon v Chefetz, supra; Friar v Vanguard Holding Corp.,* 78 AD2d 83, 91 [1980]).

It is well-established law that "[c]lass action certification is a question vested in the sound discretion of the court" *(Matter of Froehlich v Toia,* 71 AD2d 824 [1979], *lv denied* 48 NY2d 611 [1980]; *Chimenti v American Express Co.,* 97 AD2d 351, 352 [1st Dept 1983], *mot to dismiss appeal granted* 61 NY2d 669 [1983]). Further, "[t]he language of the class action statute was intentionally made broad to allow for judicial decision or elaboration" (82 NY Jur 2d, Parties, § 242, at 256).

In substance, a class action permits a few persons to join together and bring an action, upon behalf of themselves and an entire category or "class" of persons. It has been said that "[t]he class action is a major exception to the general rule of law that only those individually brought within the jurisdiction of the court can be bound by its judgment" (Siegel, NY Prac § 139 [1978]).

The party moving for class action certification has the burden *(Hoerger v Board of Educ.,* 98 AD2d 274, 277 [1983]) of satisfying the five criteria contained in CPLR 901 (a) which are:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over the questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy".

In its order permitting a matter to be prosecuted as a class action, and describing the class, a court "[w]hen appropriate * * * may limit the class to those members who do not request exclusion from the class within a specified time after notice" (CPLR 903). Further, a court may create, "[w]hen appropriate", a special class "with respect to particular issues" (CPLR 906 [1]).

Pursuant to CPLR 907, a court has broad powers to control the course of class action litigation *(City of Rochester v Chiar-*

*ella,* 86 AD2d 110, 116 [1982], *affd* 58 NY2d 316 [1983], *cert denied sub nom. Quality Packaging Supply Corp. v City of Rochester,* 464 US 828 [1983]).

Court approval is required for the settlement of a class action, and "[n]otice of the proposed * * * compromise shall be given to all members of the class in such manner as the court directs" (CPLR 908).

While CPLR 908 does not prescribe specific guidelines for a court to follow in determining the merits of a proposed class action settlement "case law suggests the components which should be considered in reviewing a settlement: the likelihood of success, the extent of support from the parties, the judgment of counsel, the presence of bargaining in good faith, and the nature of the issues of law and fact *(State of West Virginia v Pfizer & Co.,* 314 F Supp 710, 740, affd 440 F2d 1079, cert den *sub nom. Cotler Drugs v Pfizer & Co.,* 404 US 871)" *(Klurfeld v Equity Enters.,* 79 AD2d 124, 133 [1981]). The United States Supreme Court noted, in *Carson v American Brands* (450 US 79, 88, n 14 [1981]), "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement".

Although CPLR 908 mandates that notice of the proposed settlement "shall be given to all members of the class in such manner as the court directs", no criteria is set forth in the rule, which indicates the kind of information the notice should contain.

We believe that a trial court properly exercises its discretion under CPLR 908 by only approving for publication a notice, which, at a minimum, informs all class members of the pending class action (CPLR 904), the composition of the class, the issues between the parties, the terms of the proposed settlement, how a class member may object, the time period within which such objection, if any, must be made, and the date on which the trial court will hold a hearing, at which same will consider the fairness of the proposed settlement.

The United States Court of Appeals, Second Circuit, in *Weinberger v Kendrick* (698 F2d 61, 70 [1982], *cert denied sub nom. Lewy v Weinberger* and *Coyne v Weinberger,* 464 US 818 [1983]), stated, in pertinent part, concerning the notice of proposed class action settlements, which is required to be given under rule 23 of the Federal Rules of Civil Procedure, "[a]lthough no rigid standards govern the contents of notice to

class members * * * the notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings' *Grunin v. International House of Pancakes,* 513 F2d 114, 122 (8 Cir.), *cert. denied,* 423 U.S. 864 * * * [1975]".

As mentioned *supra,* although appellant is an out-of-State resident, with no contacts in this State, the IAS court denied appellant's request to opt out or be excluded from the class action settlement.

Several years ago, in *Phillips Petroleum Co. v Shutts* (472 US 797 [1985]), the United States Supreme Court made a significant constitutional ruling *(see, Weinberg v Hertz Corp.,* 116 AD2d 1, 6 [1st Dept 1986], *affd* 69 NY2d 979 [1987]), which concerns the right of an absent plaintiff, who is a nonresident of the forum State, to opt out of a class action. That case involved a class action for money damages, which was brought in the State of Kansas, upon behalf of thousands of class members who resided outside of that State. –

Specifically, the Supreme Court held that, before the forum State can bind an absent nonresident plaintiff to a class action judgment, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself [or herself] from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court" *(Phillips Petroleum Co. v Shutts, supra,* at 812). Further, the Supreme Court stated, in pertinent part, "Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. We intimate no view concerning other types of class actions, such as those seeking equitable relief" *(Phillips Petroleum Co. v Shutts, supra,* at 811-812, n 3).

It is undisputed that the consolidated class action complaint, when initially served and filed, sought equitable as well as monetary relief. However, our examination of the record before us clearly indicates that, by the time the IAS court denied appellant's request to opt out of the class action settlement, the class action was only seeking a $425,000 fee and expenses award for counsel, and not equitable relief.

Our finding, that the instant class action had changed from one for equitable and monetary relief into one "wholly or predominately for money judgments" *(Phillips Petroleum Co. v Shutts, supra,* at 811, n 3), is based upon the fact that, since

the Colt merger was completed prior to the IAS court's denial of the appellant's request to opt out, equitable relief had become moot. In other words, we refuse to exalt form over substance, and treat this class action, whose complaint had a reference to equitable relief, as one for such equitable relief when, based upon a change in circumstances, equitable relief was no longer sought at the time the Settlement Agreement was approved by the IAS court.

Recently, the United States Court of Appeals, Third Circuit, in *In re Real Estate Tit. & Settlement Servs. Antitrust Litig.* (869 F2d 760 [1989]), held that, in a Federal hybrid class action, which sought both equitable and monetary relief, a plaintiff, who lacked minimum contacts to the forum State, could not be bound to a class action settlement in the forum State, since such plaintiff was not afforded an opportunity to opt out, which violated his due process right, as provided in *Phillips Petroleum Co. v Shutts (supra)*.

In summary, upon the basis of our analysis *supra,* we find that, since the nonresident appellant, with no contacts to this State, had a due process right to opt out of the subject class action, which was "wholly or predominately for" a money judgment *(Phillips Petroleum Co. v Shutts, supra,* at 811, n 3), the IAS court abused its discretion in denying appellant's request to opt out.

We have considered the other contentions of the parties, and find them to be without merit.

Accordingly, order and judgment (one paper) entered June 16, 1988, order entered June 17, 1988, and judgment entered June 21, 1988, Supreme Court, New York County (Diane A. Lebedeff, J.), which, *inter alia,* denied James S. Merritt Company's (Merritt's) request to be excluded from the consolidated class action, and bound Merritt to the terms of the class action settlement, and further precluded Merritt from asserting its own damage claims against defendants and others, which arose from the merger transaction, are unanimously modified, on the law, on the facts, and in the exercise of discretion, to the extent of granting Merritt's request to be excluded from the consolidated class action order entered June 17, 1988; and we find that Merritt is not bound by the class action settlement, order and judgment (one paper) entered June 21, 1988, and judgment entered June 16 1988; and we further find Merritt is not precluded from asserting its own claims against defendants and others, in another forum,

which arise from the Colt recapitalization, tender offer and merger, order and judgment (one paper), entered June 21, 1988, and judgment entered June 16, 1988, are otherwise affirmed, without costs.

MURPHY P. J., SULLIVAN, ROSENBERGER and ELLERIN, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered on June 16, 1988, judgment of said court, entered on June 17, 1988, and order of said court, entered on June 21, 1988, unanimously modified, on the law, the facts, and in the exercise of discretion, to the extent of granting Merritt's request to be excluded from the consolidated class action; Merritt is not bound by the class action settlement and is not precluded from asserting its own claims against defendants and others, in another forum, which arise from the Colt recapitalization, tender offer and merger, and are otherwise affirmed, without costs and without disbursements.