■ In the Matter of STUART ROSENKRANTZ, Petitioner, v JACQUELINE McMICKENS, as Commissioner of the Department of Correction of the City of New York, et al., Respondents.—In this CPLR article 78 proceeding, transferred to this court by order of the Supreme Court, New York County (Kenneth Shorter, J.), entered March 25, 1986, the respondent's determination, dated July 26, 1985, finding petitioner Stuart Rosenkrantz guilty of leaving his post without authorization and imposing a $100 fine, is annulled and the matter remanded to respondent, Commissioner of the Department of Correction, for further consideration, as indicated herein.

Petitioner's article 78 proceeding, challenging respondents' determination as arbitrary and capricious and not supported by substantial evidence, was transferred to this court pursuant to CPLR 7804 (g). Although the determination followed from a mandatory disciplinary hearing (Civil Service Law § 75), such transfer was not appropriate because the issue herein is not one of fact, but of interpretation of the departmental rule which petitioner allegedly violated. *(Matter of Duboff Elec. v Goldin,* 95 AD2d 666, 667 [1st Dept 1983].) Despite the erroneous transfer to this court we are, nevertheless, required to determine the issues now before us. *(Matter of 125 Bar Corp. v State Liq. Auth.,* 24 NY2d 174, 180.)

The basic facts herein are not in dispute. The testimony established that on May 15, 1983, petitioner was assigned as the "A" post officer in a housing area of the Anna M. Kross Center and Officer Robert Cooper was assigned as the "B" post officer. At about 6:00 P.M., while Officer Cooper was conducting the mandatory lock-in he discovered that one of the inmates had remained in the day room and refused to return to his cell. Officer Cooper, who was still on probation at the time, informed petitioner, the more experienced officer who was regularly assigned to that particular housing area, of the inmate's refusal. At the hearing, petitioner testified that he

attempted to telephone the control room to notify them of the problem, but the line was busy. He then told Officer Cooper to take over "A" post and contact the control room while he went to the day room to speak with the inmate. An altercation between the petitioner and the inmate, who had been washing clothes, turned into a scuffle. Officer Cooper reached the control room and reported that there was trouble in the housing area. He then went to petitioner's aid.

Captain Alfred Reno was summoned by the control room to the area. By the time he arrived there, the inmate had been subdued but both officers and the inmate had sustained minor injuries. Captain Reno was ordered to conduct an investigation, which he did immediately by interviewing the participants and several inmates who had witnessed the incident. Captain Reno concluded that the officers had acted properly. The results of this initial investigation were then given to Captain Roland Jones, the immediate supervisor of the housing area to which petitioner and Officer Cooper were assigned. Several months after the incident, in February 1984, Captain Jones filed disciplinary charges against petitioner for violation of Correction Department rule 3.05.090 which forbids an officer to leave his post without prior authorization.

At the hearing, petitioner stated his belief that Captain Jones had lodged the charges against him because petitioner had filed a grievance alleging that the captain was absent from his post on the day of the incident. Although the Administrative Law Judge found that Captain Jones' testimony "was punctuated by inconsistencies", he concluded that the material facts were not in dispute. In his report, the Administrative Law Judge stated: "the issue presented is whether [petitioner] was required to obtain a supervisor's permission before temporarily assuming the 'B' post, as claimed by Captain Jones, or whether, as opined by Captain Reno, [petitioner] had and properly exercised his discretion in the circumstances."

Where, as here, the article 78 petition challenges the respondent's application of a rule to undisputed facts, no substantial evidence question arises (Matter of Duboff Elec. v Goldin, supra; see, 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7804.09). Rather, the question is whether the respondent's interpretation and application of its rule was arbitrary and capricious (Matter of Tommy & Tina v Department of Consumer Affairs, 95 AD2d 724 [1st Dept 1983], affd 62 NY2d 671). While an administrative agency's construction and interpretation of its rules are entitled to " 'greatest weight' " (supra, quoting Matter of Herzog v Joy, 74 AD2d 372, 375), the

agency may not arbitrarily disregard relevant facts bearing on such construction or interpretation.

The Administrative Law Judge generally credited Captain Jones' interpretation of the rule, that an officer could not leave his post for any reason without prior authorization. However, Captain Reno, an officer of equal rank and experience who also testified at the hearing, interpreted the rule to mean that officers could not "arbitrarily switch posts without permission", but where there was good cause for doing so temporarily "there was no real violation." Captain Reno also stated that problems with lock-in were routine occurrences and if "the supervisor was to be called every time an inmate refused to lock-in we would be running up the halls just trying to convince inmates to lock-in."

All of the witnesses testified that Warden Bain, who was the head of the facility in May 1983, had issued an oral directive that senior correction officers should give guidance to junior officers in handling minor matters. In addition, petitioner introduced into evidence the job description and list of duties for the "A" post officer on the 3:00 P.M. to 11:30 P.M. tour of duty. Among other things, the "A" officer was to "assist with lock-in". However, the Administrative Law Judge found that this "general statement was not further illuminated at the hearing" and thus could not be cited as authority for petitioner's actions. He therefore determined that "[i]t was not and cannot be within an officer's discretion to reassign posts even temporarily."

The only basis in the record to support this finding was the testimony of Captain Jones. Not only was Captain Jones' interpretation of the rule contradicted by Captain Reno, but testimony, on which all of the witnesses agreed, regarding the warden's oral directive, was also a relevant factor bearing on the application of the rule to the facts herein. Furthermore, the official job description which petitioner introduced should have been given consideration by the Administrative Law Judge. This document suggests that there may have been a conflict between the rule which petitioner allegedly violated and the official statement of his duties. The fact that the general statement in the job description was not explored more fully at the hearing was not sufficient reason for the Administrative Law Judge to disregard the authority of this document. "It is precisely because of the severe limitations on the availability of judicial review" of administrative determinations that respondents are required to make "a careful and painstaking assessment of all the available evidence" (*Matter*

*of Brady v City of New York,* 22 NY2d 601, 606). Given this failure to fully consider material and relevant evidence, the matter should be remanded to the Department of Correction for further consideration. Concur—Sullivan, J. P., Asch and Rosenberger, JJ.

Carro and Smith, JJ., dissent in a memorandum by Carro, J., as follows: I accept the statement of facts as set forth by the majority decision and agree that there is no dispute regarding the essential facts of petitioner Stuart Rosenkrantz' decision to switch posts temporarily with another correction officer, without permission from his supervisor, in order to convince an inmate to return to his cell during "lock-in". As the majority correctly observes, the issue to be resolved, then, is whether under these facts respondent's interpretation and application of the departmental rules requiring a supervisor's permission before an officer may switch or leave a post was arbitrary and capricious. I find that respondent's determination was not arbitrary and capricious.

The majority argues that in interpreting the proper application of the departmental rule against leaving a post, the Administrative Law Judge disregarded the possible significance of two internal policies which seem to conflict with the departmental rule and may have required a different application of the rule under these facts. The witnesses at the hearing all testified that there existed an oral policy directing senior officers to give guidance to junior officers in handling minor disturbances. Even assuming petitioner's obligation to assist Probationary Officer Cooper, that obligation did not dictate that petitioner ignore a departmental rule against switching posts without a supervisor's direction. While petitioner awaited a supervisor's order, he could have verbally advised Officer Cooper on how best to handle the situation.

The hearing Judge was also aware of, but not persuaded by, the fact that the job description and list of duties for petitioner's post that day included assisting with "lock-in". That it was within petitioner's duties to assist with lock-in, however, again did not dictate that he forego the departmental rule of first getting a supervisor's approval to leave his post temporarily. Proper procedures could still have been followed. The point made by the hearing Judge, which I fail to regard as arbitrary and capricious, is that no matter how well intended and pragmatic petitioner's decision to switch his post was, for the sake of orderly administration, correction officers can not on their own make such reassignments of posts. Given this conclusion, there was no arbitrariness in the hearing Judge's

decision not to further consider the effect of these other policies. The petition, accordingly, should be dismissed.