OPINION OF THE COURT
Emily Jane Goodman, J.
Petitioner Luz E. Santana (Santana), a public assistance recipient, is a disabled woman who suffers from insulin-dependent diabetes, arthritis, ulcers and chronic migraine headaches. Psychiatrists and psychologists have diagnosed her as psychotic and have treated her for depression and psychosis. She has a history of suicidal and auditory hallucinations. Ms. Santana is a recipient of public assistance. Recently, as part of the Work Experience Program (WEP or Workfare), Santana was assigned to custodial work at a welfare office. However, she missed certain workdays due to various medical and psychiatric appointments.
WEP is a new program mandated by the Social Services Law as a condition of eligibility for public benefits. (See generally, Social Services Law § 131 [5]; § 164.) This litigation involves *225 the policies and procedures followed by the various City and State agencies concerning the WEP assignments to public assistance recipients. State law requires that employable recipients of public assistance participate in WEP at various public and private work sites. In the event they do not participate, recipients are subject to ineligibility for benefits. This loss of benefits is known as a sanction. (18 NYCRR 385.19.) The result is loss of cash assistance, food stamps and Medicaid.
Home Relief recipients are exempt from the work requirements if they are found not to be employable because of illness, incapacity, or age above 60 years old. (Social Services Law § 332 [1] [a].) A recipient may not be assigned to a work assignment which exceeds her physical limitations. (18 NYCRR 385.13 [fl [4].) Assignments of an eligible participant must be in accord with any previously determined physical restrictions or limitations. (18 NYCRR 385.13 [g] [1].) Discrimination in the Work Experience Program for Home Relief recipients based on, inter alia, mental or physical disability is prohibited. (18 NYCRR 385.13 [fl [7].)
The Social Services Law expressly provides that a local social services district may not impose a penalty or sanction on a public assistance recipient for failure to comply with work requirements unless the failure to comply is “willful and without good cause”. (Social Services Law § 341 [1].) The burden of proving wilful failure to report for a work assignment is on the agency. (18 NYCRR 358-5.9 [a]; Matter of Tormos v Hammons, 240 AD2d 165 [1st Dept 1997].)
When a Home Relief recipient indicates that she is not employable, or when the social services official suspects that a medical barrier to employment or to participation in employment-related activities exists, a medical examination and a medical opinion regarding employability must be obtained. (18 NYCRR 385.2 [f] [2].)
A Home Relief recipient who believes she is unemployable, but has been determined to be employable may request a review of an employability determination. The agency must provide the recipient with a reasonable opportunity to present evidence; the agency must notify the recipient of the necessary evidence to make such a redetermination; and the recipient does not have to meet employment-related requirements until and unless a redetermination has been made by the agency and the recipient has been notified in writing that she continues to be employable. (18 NYCRR 385.2 [f] [5].)
State statute and regulations provide that the agency must notify the recipient of the availability of a conciliation proce *226 dure for resolution of disputes to work requirements. (Social Services Law § 341; 18 NYCRR 385.18.) If the agency determines that noncompliance with employment requirements was “willful and without good cause”, the agency must issue a 10-day notice of its intent to discontinue assistance. The notice must state the reasons for the determination and advise the recipients of the right to a fair hearing to contest the discontinuance. (Social Services Law § 341.) The notice of intent must detail, among other things, “the specific reasons for the action” (18 NYCRR 358-2.2 [a] [3]), and “the specific laws and/or regulations upon which the action is based”. (18 NYCRR 358-2.2 [a] [4].) The penalty for the first wilful failure or refusal to comply with work requirements without good cause is termination of benefits for 90 days. (Social Services Law § 342 [3].) A Home Relief recipient may request an administrative fair hearing before an Administrative Law Judge (ALJ) to challenge a proposed discontinuance of benefits. (Social Services Law § 22.) At the fair hearing the burden is on the agency to “establish that its actions were correct.” (18 NYCRR 358-5.9 [a].)
In the fair hearing decision, the Administrative Law Judge must, among other things, “make findings of fact, determine the issues and state reasons for the determinations”. (18 NYCRR 358-6.1 [a].)
The New York State Department of Social Services, Deputy General Counsel for Administrative Hearings, recently issued policy guidelines to its Administrative Law Judges directing that at hearings involving an imposition of a sanction for failure to comply with work rules, the local agency “must produce evidence establishing the elements of the appellant’s wilful nature to cooperate without good cause, or its determination cannot be affirmed.” (Mem from Russell J. Hanks to all Hearing Officers and Supervising Hearing Officers, dated Dec. 11, 1996, subject: policy guidelines.)
In this case, Ms. Santana missed certain days of work or was late due to various mental health appointments. She documented to her work supervisor that the reason for her lateness or absence was the appointments. Nevertheless, by notice dated September 24, 1996, the New York City Human Resources Administration (HRA) issued a conciliation notice directing Ms. Santana to appear and explain why she had failed to adhere to the agency’s rules concerning work participation. Ms. Santana reported, as directed, to the Office of Employment Services on September 30th and the problem was successfully conciliated. Exhibit H to the petition indicates that the case *227 was settled and the interviewer wrote on the conciliation disposition sheet that the case was “coded IK” because “client wants to go back to the same site”. Ms. Santana was instructed to bring a letter from her supervisor at the WEP site stating that the supervisor wanted Ms. Santana to return to work at that site. Pursuant to a second conciliation notice, Ms. Santana reported to the Office of Employment Services on October 7. She brought with her the requested letter from her supervisor at the previously assigned WEP site requesting that Ms. Santana be reassigned to that site. However, the new conciliation worker at the October 7th meeting advised Ms. Santana that reassignment to the same site was not possible because pursuant to HRA policy “Reinstatements” are to go to “Parks and Sanitation only * * * unless limitation [s] preclude.” If limitations preclude, reassignments are assigned to the Department of General Services (DGS). But, according to the October 7th conciliation worker, Ms. Santana “was offered DGS * * * but she refused” (see, exhibit K to petition).
By notice dated October 17, 1996, HRA informed Ms. Santana that it intended to discontinue her public assistance benefits as of October 27, 1996 for wilfully failing to report to her (new) assigned work. Ms. Santana requested a fair hearing which was held on November 15, 1996. She appeared pro se and a Spanish language interpreter translated the proceedings. The hearing lasted approximately six minutes, including translation of her questions. The ALJ did not ask the City’s representative any questions about the lack of findings of alleged wilfulness or absence of good cause. The decision after fair hearing states that Santana “did not establish that the failure to comply with employment requirements was not wilful or without good cause.” Ms. Santana was sanctioned, that is, left without cash assistance or Medicaid benefits, for 90 days. Her food stamps were also discontinued even though the notice of intent does not provide for discontinuance of her food stamps.
Ms. Santana’s petition challenges the sanction imposed upon her and seeks annulment of the decision after fair hearing. Ms. Santana also challenges the policy of the New York City Department of Social Services (the City) to assign all individuals who have been found “employable with limitations” to Workfare assignments to either the Department of Sanitation or the Parks Department. This policy resulted in the City’s refusal to permit Ms. Santana to return to the office custodial work which she had been doing before she was sanctioned.
*228 Petitioner Marie Mitchell is a recipient of Home Relief benefits found to be “employable with limitations” by HRA. Ms. Mitchell has a documented medical record of serious respiratory problems, hypertension and arthritis. She successfully carried out various clerical and indoor WEP assignments but, in November 1996, was assigned a maintenance position with the Sanitation Department. Ms. Mitchell contested this assignment because of her asthma and stated at her fair hearing on December 5, 1996, that she was willing to participate in the WEP program but that she needed assurances that her work assignment would not be at an outdoor site and would not expose her to dust, fumes or extremes of temperature. Ms. Mitchell was ordered to return to work with the Sanitation Department. She moves to intervene in the proceeding commenced by Ms. Santana pursuant to CPLR 1013.
Petitioner Cytherea Iverson is another Home Relief recipient who was found employable with limitations by HRA. She challenges the City’s determination that as a result of her classification as employable with limitations she is subject to assignment at the targeted City agencies, in her case the Department of General Services.
Ms. Iverson suffers from severe chronic asthma for which she receives ongoing medical treatment and requires a portable oxygen tank. She sought exemption from an assignment to work as a “maintenance worker”. She was unsuccessful in this and suffered a 90-day sanction even though the City’s own doctor found that she could not be exposed to dust and fumes. Ms. Iverson’s petition states that when the WEP intake worker informed her that she was being assigned to work as a maintenance worker with DGS, Ms. Iverson complained that such an assignment would “kill her”. She alleges that the WEP worker refused to listen to her and refused to take a copy of her doctor’s report indicating that she could not work at all, and furthermore did not explain that she was entitled to request a fair hearing. On the day that Ms. Iverson intended to report to her work assignment, she was ill and sought treatment at a hospital emergency room. She was sent tbe same conciliation notification received by Ms. Santana, but did not attend the conciliation. She then received a notice of intent to discontinue benefits and requested a fair hearing. Ms. Iverson appeared pro se at the fair hearing. Copies of her medical documentation apparently were not in the file and the AU did not offer to adjourn the case for Ms. Iverson to bring in extra copies of her own doctor’s report. The City representative put into evidence *229 the physician’s assessment which indicated that Ms. Iverson is employable subject to limitations and included avoidance of extremes of dust and fumes due to her asthma as a limitation. The petition alleges various other conduct by the ALJ at the hearing which, if true, indicates that the AU did not help this pro se party to articulate the types of restrictions she needed as well as appropriate work. The ALJ’s decision found that her testimony was not credible because it was “inconsistent and evasive without any medical documentation” and therefore that she did not establish that her failure to comply with work requirements was not wilful or without good cause. The petition alleges that the ALJ’s conduct violated numerous provisions of the New York Social Services regulations which require an ALJ to develop the record adequately for an unrepresented appellant, improperly shifted the burden of proof to petitioner in violation of the Social Services Law and other violations.
Petitioner Pearly Alii also is a public assistance recipient who was called into the Workfare office August 19, 1996. The agency examining physician exempted her from Workfare requirements for six months because she was recovering from cancer surgery and also suffered back pain and high blood pressure. After several other medical examinations by respondents’ doctors, she was assigned to work at the Department of Sanitation and was told that she was required to go to the assignment even if she contested it. The Workfare interviewer did not advise Ms. Alii that if she requested a fair hearing to contest employability within 10 days she would not have to report to the Department of Sanitation pending her fair hearing decision. Ms. Alii appeared pro se at the fair hearing on February 10, 1997. Ms. Alli’s petition and proposed class action complaint allege a variety of violations of the same or similar regulations as were violated at the fair hearings of the other petitioners. Ms. Alii subsequently was approved for Supplemental Security Income and Social Security benefits.
Petitioner Gloria Jimenez also is a public assistance recipient who was assigned to work as a street cleaner in the WEP program. She was required to work outdoors during the winter months even though respondents’ medical team classified her as E-II, “light duty”. Exposure to cold and rainy weather exacerbated her arthritis and she missed work in late February or early March 1997. She was sanctioned for her alleged failure to comply with attendance requirements at the Department of Sanitation. Ms. Jimenez, who speaks limited English, was interviewed at all aforementioned points by non-Spanish *230 speaking WEP workers. Her petition also alleges that at her fair hearing at which she challenged the requirement that she work outside, the ALJ did not assist her in presenting evidence and shifted the burden to Ms. Jimenez to refute the allegation of wilfulness and lack of good cause for her failure to perform work. The petition alleges that Ms. Jimenez’ public assistance and Medicaid were terminated in May 1997 and that her food stamps were discontinued when the work sanction commenced. This court restored her ongoing benefits by a temporary restraining order, but her full retroactive benefits have not been issued.
At the beginning of this litigation, petitioners Mitchell, Iverson, Alii and Jimenez sought intervention and/or consolidation with Santana. Subsequently, due to developments with petitioners Santana and Iverson, and upon motion with respect to Santana, the court severed those two petitions. Petitioners Mitchell, Alii and Jimenez moved to amend the caption to name them as plaintiffs and class action representatives. Plaintiffs further move for a grant of class certification and a preliminary injunction. The proposed class action complaint is annexed to the notice of motion dated September 25, 1997. The court previously granted Mitchell’s motion to intervene and Mitchell’s proceeding was consolidated with Alii and Iverson. Petitioners/plaintiffs now move for class certification and preliminary injunctive relief.
As is evident from the above recitation of facts, all petitions involve an alleged failure by respondents/defendants to make WEP assignments consistent with plaintiffs’ employability limitations and allege various due process and other violations by the agency Administrative Law Judges.
The criteria for class certification are set forth in CPLR 901 (a): numerosity, the predominance of common questions of law and fact, typicality, adequacy of representation and superiority over other methods for fair and efficient adjudication.
As to the criteria, numerosity clearly is present as plaintiffs have shown that more than 8,500 public assistance recipients examined in the first quarter of 1997 were found to be employable with limitations. Respondents contest various elements of the common questions of law or fact. However, the rule requires a predominance of claims, not exact equivalents of facts. (Friar v Vanguard Holding Corp., 78 AD2d 83.) The common questions are evident from the above recitation of facts, namely that petitioners were found employable with limitations and allegedly were not assigned to assignments within *231 their physical abilities nor accommodated under the Americans with Disabilities Act of 1990 (42 USC § 12101 et seq. [ADA].) The principal legal issue raised by all is whether defendants improperly assigned class members whom they have classified as E-II to mandatory WEP assignments which exceed or are inconsistent with their medical restrictions. All class members are subjected to the same policies and procedures, notices, etc. Plaintiffs have demonstrated that each is a qualified individual with disabilities recognized under the ADA and present claims under the ADA.
The proposed named plaintiffs will fairly and adequately protect the interests of the class. They are represented by the Legal Aid Society and have a commonality of interests with class members that is sufficient to insure that class interests will be protected. (Brandon v Chefetz, 106 AD2d 162.) As the above factors are met, a class action is considered to be the most effective way to proceed with a lawsuit. (Tindell v Koch, 164 AD2d 689.) Without a class action, thousands of disabled public assistance applicants and recipients may be left without an effective remedy to challenge the practices alleged in the petitions. Certification of a class also serves to protect class members whose claims are not settled, as individual claims of various petitioners are settled. The question of petitioners’ right to WEP assignments which do not jeopardize their health is “of public importance and significance, likely to recur and yet evade review” unless this court certifies a class of plaintiffs. (McCain v Koch, 117 AD2d 198, 211.)
The “governmental operations” rule does not preclude class certification because of the “demonstrated reluctance” by all governmental entities that have appeared before the court in this case to extend the temporary injunctive relief to individuals other than the named plaintiffs. Under Varshavsky v Per-ales (202 AD2d 155), class certification is appropriate.
MOTION FOR PRELIMINARY INJUNCTION
It is clear from the foregoing recitation of facts that petitioners and members of the certified class are subject to irreparable harm from the improper termination of assistance and the requirement that they engage in mandatory WEP activities that are beyond their medical capabilities or are inconsistent with their medical diagnoses. In contrast, there is no apparent harm to defendants.
The court also finds that petitioners are likely to succeed on the merits of their claims under the Social Services Law and *232 their due process claims, at least concerning the issue of notice. Not one of the named petitioners is requesting an exemption from participation in WEP; they merely are requesting, consistent with State and Federal law and due process requirements, that they be provided on a timely basis with information that will enable them to participate in the WEP program in ways which do not endanger their health. The various notices of employability that have been submitted on this motion by both sides do not, for example, adequately inform recipients of their rights to review their case records nor the means to review the records so as to determine how the agency arrived at its conclusion that the recipient is employable without limitations. Various forms submitted also indicate that participants in the WEP program are led to believe by various notices that they are required to continue going to work assignments until the agency tells them their assignment is terminated for medical review. However, as noted earlier in this decision, a recipient may not be assigned to a work assignment which exceeds her physical limitations (18 NYCRR 385.13 [f] [4]), and the recipient may not be required to comply with employment-related requirements, until a redetermination has been made by the agency as to employability. (18 NYCRR 385.2 [f] [5].)
In the cases before the court, it appears that the Administrative Law Judges are unfairly penalizing claimants who are not properly notified of their rights when they are claiming unemployability by, among other things, improperly shifting the burden of proof to claimants to show that a failure to show up at a WEP assignment was not wilful. The agency ALJs also appear to be violating the agency’s own directives which require assistance to pro se claimants and that the agency produce “evidence” of the claimant’s wilful violation.
There is at least an issue of fact as to whether the notices of employability are inadequate and improper — the notices are sent to recipients before the recipients are advised of their specific assignments, but the recipient is not excused from complying with the work assignment unless she requests a fair hearing within 10 days of the effective date of the employ-ability notice. But the employability notices are generally sent more than 10 days before the recipient is advised of her exact assignment. Thus, the claimants generally are not able to request a fair hearing within 10 days of the first notice.
The petitioners in this case are “employable with limitations”; it is clear that they should be afforded adequate time to protect themselves against an assignment that is not compati *233 ble with their limitations. To do otherwise violates the requirements of 18 NYCRR part 385 and the Federal ADA which are meant to protect petitioner class members from being assigned to inappropriate WEP assignments which jeopardize their health and put them at risk of sanctions.
After petitioners first moved for a preliminary injunction, the Department of Labor promulgated new regulations concerning challenges to employability determinations. The new regulations repeat the same defect as the old ones. That is, recipients are still required to comply with WEP assignments pending a determination at a fair hearing or pending a medical evaluation.
It is hereby ordered that petitioners’ motion for class certification and preliminary injunctive relief is granted; it is further ordered that leave is granted to amend and sever the petition of Cytherea Iverson and to sever the claims of Luz Santana; and it is further ordered that the cross motions by respondents to dismiss and/or to convert the proceeding to a CPLR article 78 proceeding and to transfer the proceedings to the Appellate Division is denied; and it is further ordered that the caption is amended to reflect that petitioners Mitchell, Alii and Jimenez will be named plaintiffs and class representatives.