OPINION OF THE COURT
Joan A. Madden, J.
Petitioner, Robert Roche, who is pro se in this proceeding as he was in the administrative proceeding, was a recipient of public assistance benefits when he was directed to appear for a Work Experience Program (WEP) assignment as a maintenance worker. Petitioner failed to appear and the City issued a notice of intent, dated January 15, 1999, to discontinue his public assistance benefits effective January 25, 1999 (First Notice). The First Notice further advised petitioner that this sanction affected only his eligibility to receive public assistance, and explicitly stated that his food stamps and medical assistance benefits were to remain unchanged.
On January 25, 1999, at a conference with the City agency, petitioner’s request for a medical exemption from WEP because he was disabled was denied on the ground that he failed to submit sufficient documentation. On the same day, January 25, 1999, he requested a fair hearing from the State agency to challenge the City agency’s denial. Petitioner states he never received notice and thus did not appear at a March 30, 1999 fair hearing, and a default was entered against him. Based on that default, petitioner’s public assistance grant was discontinued on April 7, 1999. Petitioner’s food stamps and Medicaid benefits were also discontinued, notwithstanding the state *583 ment to the contrary in the First Notice. Shortly thereafter, petitioner requested another fair hearing from the State agency, which is the subject of this proceeding.
However, in the interim, petitioner received a second notice of intent to discontinue his public assistance grant for noncompliance with employment-related requirements dated March 5, 1999 (Second Notice). At a conference with the City agency on April 2, 1999, petitioner’s request for a medical exemption was granted (the bottom of the Second Notice is stamped “Settled in Conference in Favor of Client [01]”), and the form is marked with a circled hand notation “HSS exam,” apparently a notation that petitioner is to be referred to an agency medical examination to determine his employability. According to petitioner, he was subsequently told by a worker for the City agency that the HSS exam was never scheduled because his public assistance case was closed due to his failure to appear for a fair hearing on the First Notice.
Fair Hearing
As to the First Notice, a fair hearing was held on June 4, 1999. The transcript comprises 17 pages of testimony, seven pages of which discuss whether petitioner’s request for a fair hearing was timely, and whether the default of March 30, 1999 could be vacated. That issue was ultimately resolved in petitioner’s favor. The balance of the transcript is largely incomprehensible, partially due to a poorly transcribed record (many of the words and paragraphs are transcribed as either indecipherable or missing). The problem of the incomplete transcript is exacerbated by the Administrative Law Judge’s (ALJ) failure to make an opening statement and to establish an order in the presentation of testimony and exhibits. The ALJ, petitioner, and the City representative spoke one after the other, cutting each other off, while addressing different facets of the case, without clearly addressing the remaining issue: whether petitioner had a medical excuse in refusing to cooperate with the WEP program.
Regarding the documentary evidence, petitioner offered, and the ALJ accepted, records from Kings County Hospital establishing petitioner was admitted into the hospital on August 29, 1998, operated on on August 30, 1998, and discharged on September 4, 1998 for an infection due to a bite on his left hand. Also accepted into evidence was a copy of the Second Notice of Intent dated March 5, 1999, which established that the subsequent work sanction was settled in petitioner’s *584 favor by the City agency. Petitioner further offered Kings County Hospital records regarding a 1987 hospitalization and surgery on his right hand, but the ALJ refused to accept it stating “I am not going to need that.” The rejected medical records were neither marked nor identified.
By determination dated June 11, 1999, the decision after fair hearing (Decision) held that the petitioner’s default at the March 1999 fair hearing should be vacated and that the Statute of Limitations did not expire. The Decision further held that petitioner’s August 30, 1998 hospitalization, without more recent medical documentation regarding petitioner’s medical condition, did not constitute a valid reason for petitioner’s failure to report to the December 29, 1998 WEP assignment. On these grounds, the State affirmed the City’s determination in all respects. Petitioner thereupon commenced this CPLR article 78 proceeding challenging the Decision.
In this proceeding, petitioner alleges he accepted the WEP assignment under “extreme pressure,” even though he “submitted all my medical file from Kings County Hospital and my doctor statement that I was medically unfit to work at that time.” He further alleges that, since 1987, his right hand has been permanently partially disabled following major surgeries. Although the hospital records for the 1987 surgeries and an undated letter on Kings County Hospital Center stationery are attached to the petition as an exhibit, they were not part of the record below. The doctor’s letter states: “Please be advised that above patient suffered a severe hand infection from human bite that required surgery September 1998 with extended recovery time of 6 months. During this period patient was unable to lift heavy objects or work as a laborer.” In opposition to the petition, the State and the City contend that the determination is supported by substantial evidence. The City also contends that this proceeding is barred by the applicable Statute of Limitations and that this proceeding is moot or, in the alternative, that the proceeding must be transferred to the Appellate Division for determination of the substantial evidence issue.
Statute of Limitations
A challenge to an administrative determination must be commenced within four months after the determination becomes final and binding upon the petitioner (Matter of Todd v New York City Hous. Auth., 262 AD2d 202 [1st Dept 1999]; CPLR 217). For a determination to be considered binding, unequivo *585 cal actual notice must be received by the petitioner (Matter of Lubin v Board of Educ., 60 NY2d 974 [1983], cert denied 469 US 823 [1984]). Here, although petitioner has not advised the court of the date on which he received the State’s determination, the record demonstrates that the State issued its decision on June 11, 1999. Therefore, the earliest possible date the limitations period could have expired is October 11, 1999. The County Clerk’s Office date stamp on the petition demonstrates that the petition was filed with the court on October 8, 1999, three days prior to expiration of the limitations period. Therefore, this proceeding is timely.
Mootness
The City argues that this petition should be dismissed as “academic” as even if petitioner were to prevail on his claims, he would have no remedy at law because he failed to reapply for benefits when the sanction period ended on September 7, 1999, and Social Services Law § 106-b prohibits retroactive public assistance to persons who are not current recipients of assistance, relying upon Patrick v New York City Dept. of Social Servs. (257 AD2d 512 [1st Dept 1999]) and Matter of Ortiz v Hammons (171 Misc 2d 699 [Sup Ct, NY County 1997]).
However, unlike the petitioners in Patrick and Ortiz (supra), who were working and thus financially ineligible for benefits at the time of the hearing and when the article 78 proceeding was commenced, there is no evidence that this petitioner was working during the relevant time periods. In fact, petitioner alleges that he is “dependant [sic] upon soup kitchens and the good will of friends for lodging and hygiene.” Therefore, it appears he remains financially eligible for assistance.
As to the City’s argument that retroactive public assistance is prohibited, once petitioner reapplies, his case history on welfare is resurrected such that the agency is responsible for the payment of any past underpayment (18 NYCRR 352.31 [f]), just as the petitioner would be liable for any past overpayment (18 NYCRR 352.31 [d]).
Moreover, the length of time that a recipient of public assistance will be sanctioned for a work rule violation is a function of the number of sanctions to which the individual has been subject. For the first offense, the sanction lasts 90 days; the second offense carries a 150-day sanction; and a third violation carries a 180-day sanction (12 NYCRR 1300.12 [d] [2]). Petitioner has already been sanctioned once; this appeal concerns a second sanction. Thus, if petitioner receives benefits *586 again, it is imperative that this wrongful sanction be deleted from his records, as it will raise the level of any future sanction.
Merits
A review of the administrative record reveals a lack of adherence to minimal due process standards. This is evident in the conflicting notices and determinations, a lack of clear and coordinated action by the City and State agencies, and the lack of clear and concise instructions to petitioner, all of which culminated in the failure to establish a proper administrative record below. Where subsistence benefits are at stake, it is of the utmost importance that there be strict adherence to due process safeguards and that conflicting actions by agencies be scrupulously examined.
Respondents ignored conflicting determinations at the hearing, in the Decision, and in this proceeding. Such conflict is evident in the opposite conclusions reached by the respondents regarding petitioner’s employability (petitioner is not sanctioned and is granted a medical evaluation on the Second Notice but is found employable and sanctioned on the First Notice). Such conflict is also evident in the termination of petitioner’s food stamp and Medicaid benefits despite the clear and unambiguous statement in the notices that only his cash grant was in issue.
Furthermore, this court finds the State’s arguments regarding the competency and import of the doctor’s letter are without merit or foundation. The State objects to the competency of the doctor’s letter as petitioner failed to submit it at the hearing. However, it is unclear whether petitioner offered the letter together with the 1987 medical records which were rejected by the ALJ. Conversely, if petitioner did not attempt to submit the letter at the hearing, had petitioner been informed of the nature of the proceedings and issues involved, he could have requested an adjournment to submit it. As to its significance, the State argues the letter “fails to support his claim that he was unemployable on December 29, 1998,” despite the fact that the letter clearly states that petitioner could not work for six months after hand surgery in September 1998.
Due Process
The State agency’s regulations (18 NYCRR 358-5.6 [b]) clearly state the ALJ must ensure a complete record by, inter alia, doing the following:
*587 “(2) make an opening statement explaining the nature of the proceeding, the issues to be heard and the manner in which the fair hearing will be conducted;
“(3) elicit documents and testimony, including questioning the parties and witnesses, if necessary, particularly where the appellant demonstrates difficulty or inability to question a witness * * *
“(4) where the hearing officer considers independent medical assessment necessary, require that an independent medical assessment be made part of the record when the fair hearing involves medical issues * * *
“(6) adjourn the fair hearing when in the judgment of the hearing officer it would be prejudicial to the due process rights of the parties to go forward with the hearing * * *
“(8) * * * where necessary to develop a complete evidentiary record, issue subpoenas, and/or require the attendance of witnesses and the production of books and records.”
As evidenced from this fair hearing transcript, the ALJ failed to make a complete record. Although it appears that passages are missing, what is transcribed demonstrates a departure from the agency’s own regulations. Petitioner was never advised as to the nature of the proceeding, the issues to be heard or the manner in which the hearing would be conducted. In addition, the ALJ failed to elicit documents and testimony, and failed to consider an independent medical assessment. This last failure is salient in light of the fact that the City agency was planning to schedule petitioner for an HSS exam regarding the Second Notice, and this evidence was before the ALJ.
Hence, the fair hearing held here was in violation of the State agency’s own regulation (18 NYCRR 358-5.6 [b]), and was a denial of due process such that a remand for a de novo hearing is required (Matter of Blackman v Perales, 188 AD2d 339, 340 [1st Dept 1992] [the Administrative Law Judge “(did not) delineate the issues so that (pro se) petitioner would know the conditions under which she would be entitled to a grant of assistance and be in a position properly to present her case”]; Matter of Schnurr v Perales, 115 AD2d 740, 741 [2d Dept 1985] [ALJ’s failure to “delineate the issues upon which the hearing was to focus or to develop the testimony presented * * * effectively deprived (pro se claimant) of her right to a fair hearing”]; Matter of Dreher v Smith, 65 AD2d 572, 573 [2d Dept 1978] [pro se claimant was not given proper assistance nor “was there sufficient development by the hearing officer of the *588 testimony presented by her”]; Matter of Rezoagli v Toia, 62 AD2d 1020 [2d Dept 1978] [pro se claimant “not accorded the opportunity to make a clear presentation of her evidence * * * and was not advised of her right to procure an adjournment of the hearing to enable her to produce witnesses essential to her case”]; Feliz v Wing, NYLJ, Feb. 1, 2000, at 27, cols 1, 3 [Sup Ct, NY County, Schlesinger, J.] [hearing transcript consists of four pages; ALJ utterly failed to elicit a complete record: “Due process, as guaranteed by the Constitutions of New York and the United States, stands for the proposition that a statutorily mandated hearing provide a (pro se petitioner a) meaningful opportunity to understand the proceedings, to participate in the proceeding, and to be adequately heard”]; Matter of Nembhard v Turner, 183 Misc 2d 73, 77 [Sup Ct, NY County 1999, Moskowitz, J.] [“In reviewing (pro se claimant’s) fair hearing transcript and decision, the court finds that NYCHRA and the State agency failed to follow many of the procedural requirements to ensure fundamental fairness”]; Matter of Santana v Hammons, 177 Misc 2d 223, 232 [Sup Ct, NY County 1998, Goodman, J.] [“The agency ALJs also appear to be violating the agency’s own directives which require assistance to pro se claimants”], revd and mod on other grounds sub nom. Mitchell v Barrios-Paoli, 253 AD2d 281 [1st Dept 1999]; Matter of Acevedo v Wing, NYLJ, Apr. 18, 1997, at 27, cols 2, 3 [Sup Ct, Bronx County, Green, J.] [“Despite the fact that (pro se) petitioner was clearly a person in need of assistance in presenting evidence and questioning witnesses, no effort was made to obtain the information about the nature and extent of her medical treatment or to assist her in cross-examining witnesses in order to ensure a complete record”]).
Furthermore, due process considerations require that when the “claimant is unrepresented by counsel, the ALJ is under a heightened duty ‘to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.’ ” (Echevarria v Secretary of Health & Human Servs., 685 F2d 751, 755 [2d Cir 1982], citing Hankerson v Harris, 636 F2d 893, 896 [2d Cir 1980], and Gold v Secretary of Health, Educ. & Welfare, 463 F2d 38, 43 [2d Cir 1972].) These seminal Federal cases delineate the due process requirements in disability cases under the Social Security Act and regulations (42 USC § 402 et seq.; 20 CFR 404.1 et seq.). Similarly, under New York State’s Social Services Law and regulations (18 NYCRR 358-5.6 [b]), procedural due process requires such a heightened duty on the part of State ALJs to develop the record.
*589 Specifically, the ALJ here not only failed to make an opening statement as required by 18 NYCRR 358-5.6 (b) (2), but fundamentally, the record fails to address: (1) as to the burden of proof, the standard to be applied, and the party who has the burden; (2) petitioner’s rights regarding the presentment of evidence; (3) identification of the documents which the ALJ rejected; (4) whether petitioner should be referred for a medical exam, and if not, why not; (5) if there was a need for petitioner to submit recent medical evidence, and his right to adjourn the hearing in order to obtain the evidence. (See, e.g., Echevarria v Secretary of Health & Human Servs., 685 F2d, supra, at 755 [2d Cir 1982]; Hankerson v Harris, 636 F2d, supra, at 896 [2d Cir 1980]; Gold v Secretary of Health, Educ. & Welfare, 463 F2d, supra, at 43 [2d Cir 1972].)
In addition, at the hearing, petitioner testified that he was unemployable because of hand surgeries on both hands, and that he has “metal in this hand, and I cannot take the cold.” Under these circumstances, the record indicates a failure to address: (1) whether the work assignment petitioner refused was indoors or outside, as petitioner was assigned a job in the middle of winter; (2) whether petitioner is left or right handed; and (3) any restriction in the use of each of his hands. (See, e.g., Echevarria v Secretary of Health & Human Servs., supra; Hankerson v Harris, supra; Gold v Secretary of Health, Educ. & Welfare, supra.)
Finally, respondents maintain that this proceeding raises a substantial evidence question and therefore this court must transfer the proceeding to the Appellate Division (CPLR 7804 [g]). However, where, as here, a petition raises issues regarding respondents’ interpretation of statutes and regulations, and their application to the facts, this court must decide the case (Matter of Westmount Health Facility v Bane, 195 AD2d 129, 131 [3d Dept 1994]; Matter of Rosenkrantz v McMickens, 131 AD2d 389 [1st Dept 1987]).
Accordingly, it is hereby ordered and adjudged that the decision after fair hearing dated June 4, 1999 is annulled and the matter is remanded to respondents to conduct a new fair hearing in accordance with this decision and which shall meet the minimum due process requirements outlined above.
[Portions of opinion omitted for purposes of publication.]