OPINION OF THE COURT
Mitchell J. Danziger, J.
The decision/order of this court is as follows:
Plaintiff moves pursuant to article 9 of the CPLR for an order certifying a class of what plaintiff initially defines in his notice of motion as, “All persons who were held in New York City jails during the limitations period based solely on an Immigration and Customs Enforcement (TCE’) detainer.”[1] Plaintiff contends that the “limitations period” referenced in the above proposed class commenced (at the latest) on August 15, 2009 and ended on December 21, 2012. Plaintiff asserts that the class consists of upwards of 9,000 individuals. Before addressing the merits of the instant application, a brief recitation of the facts herein is warranted.
Plaintiff initially commenced this action seeking damages for injuries allegedly sustained by him as a result of his alleged wrongful confinement and false imprisonment by the New York City Department of Correction (DOC). Plaintiff asserts that his *311 improper detainment was based upon a civil detainer issued by the U.S. Immigration and Customs Enforcement (ICE) to the DOC that indicated an investigation had been commenced into plaintiff’s immigration status. The detainer requested that DOC hold plaintiff for 48 hours beyond his scheduled release date on the basis of ICE’s pending investigation. Plaintiff alleges that DOC officials routinely and unlawfully maintained custody of those subject to such ICE detainers well beyond the requested 48 hour period. Additionally, plaintiff asserts that his extended detention, even for the first additional 48 hours beyond his scheduled release date, based solely on the aforementioned detainer, constituted false imprisonment and a violation of his civil rights.
Named plaintiff, Oscar Onadia, was arrested on December 10, 2008 in the City of New York for unlicensed driving. During processing and arraignment, it was discovered that Mr. Onadia had a prior charge of unlicensed driving from April 15, 2008, for which he received a five day sentence which was served at Riker’s Island. Adjusting the sentence for good time credits, Mr. Onadia alleges that his sentence should have expired on December 12, 2008. In addition to the aforementioned five day sentence, bail was set at $1 for the December 10, 2008 unlicensed driving charge. Mr. Onadia served his five day sentence for the prior charge and upon completion, Mr. Onadia attempted to pay his $1 bail. However, the bail was allegedly refused by DOC officials on the basis that an ICE detainer was received. The said detainer was labeled “Form 1-247 (Rev. 4-l-97)N” (hereinafter Mr. Onadia’s detainer). Mr. Onadia’s detainer, in relevant part, stated: ‘YOU ARE ADVISED THAT THE ACTION BELOW HAS BEEN TAKEN BY THIS SERVICE CONCERNING THE ABOVE NAMED INMATE OF YOUR INSTITUTION.” Mr. Onadia’s detainer had an “x” marked in the box indicating that an “Investigation has been initiated to determine whether this person is subject to deportation from the U.S.” The next section of Mr. Onadia’s detainer is entitled “IS [sic] REQUESTED THAT YOU ... Accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender’s classification, work and quarters assignments, or other treatment which he would otherwise receive.” Mr. Onadia’s detainer also provided, “Federal Regulations (8 CFR 287.2) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal *312 Holidays) to provide adequate time for Immigration to assume custody of the alien.”
Based on the detainer, Mr. Onadia’s bail was not accepted by the DOC until January 15, 2009. Notwithstanding, the DOC allegedly refused to release Mr. Onadia from custody until January 23, 2009, 42 days after his original sentence allegedly expired.
Mr. Onadia’s second amended complaint sets forth class action allegations on behalf of “all persons who have been the subject of an ICE detainer and who have been unlawfully detained in connection with said ICE detainer in NYC jails for more than 48 hours after all other conditions for their release have been satisfied.” The second amended complaint asserts the following causes of action on behalf of Mr. Onadia, and on behalf of the purported class: state and federal causes of action for false imprisonment; deprivations of federal rights pursuant to 42 USC § 1983; negligence; negligent hiring, screening, retention, supervision and training; gross negligence; violation of article I, § 6 of the New York State Constitution; and irreparable harm. The court notes that the second amended complaint, dated November 3, 2012, was the first time plaintiff asserted causes of action on behalf of the purported class. The motion to amend the first amended complaint to include the class causes of action was made on August 15, 2009. After the exchange of discovery, Mr. Onadia moved to certify the class in accordance with a so-ordered stipulation that extended his time to move for class certification.
As more fully expanded upon below, the original definition of the class set forth in Mr. Onadia’s notice of motion has been refined so as to set class parameters as follows:
“All persons who were detained by the New York City Department of Correction, during the limitations period, beyond the individual’s scheduled release date, despite all other conditions for the person’s release being satisfied, and based solely on a detainer issued by U.S. Immigration and Customs Enforcement (‘ICE’) prior to December 21, 2012 that either (1) indicated that an investigation had been commenced by ICE, or (2) failed to indicate a reason for continued detention (i.e. no boxes checked on the detainer form).”
Summary of Evolving Law Regarding Civil Detainers
In October 2011, the New York City Council Committee on Immigration held a hearing on introductory bill No. 656, a lo *313 cal law to amend the Administrative Code of the City of New York to limit DOC detentions based on ICE detainers. The Committee found that, “although there is no agreement obligating [the DOC] to do so, [DOC] cooperates with the [ICE] Criminal Alien Program (‘CAP’) by: . . . honoring immigration de-tainers issued by ICE for up to 48 hours.” The Committee further found that “[a] civil immigration detainer is a ‘request’ to a law enforcement agency to detain a named individual for 48 hours after that person would otherwise be released ... in order to provide ICE an opportunity to assume custody of that individual” (Committee Report, NY City Council, Committee on Immigration, Governmental Affairs Division [annexed as exhibit 2 to plaintiff’s attorney’s affirmation in support of motion]). Ultimately the Committee determined that cooperation between ICE and DOC should not be supported and expressed its intent to limit said cooperation by creating a category of persons who could not be detained based on ICE detainers.
Consequently, chapter 1, title 9 of the Administrative Code of the City of New York was amended by adding a new section numbered 9-131 and titled “Persons not be detained.” Section 9-131 (b) provides as follows:
“Prohibition on honoring a civil immigration detainer. 1. The department may only honor a civil immigration detainer by holding a person beyond the time when such person would otherwise be released from the department’s custody, in addition to such reasonable time as is necessary to conduct the search specified in subparagraph (ii) of this paragraph, or by notifying federal immigration authorities of such person’s release, if:
“i. federal immigration authorities present the department with a judicial warrant for the detention of the person who is the subject of such civil immigration detainer at the time such civil immigration detainer is presented; and “ii. a search, conducted at or about the time when such individual would otherwise be released from the department’s custody, of state and federal databases, or any similar or successor databases, accessed through the New York state division of criminal justice services e-JusticeNY computer application, or any similar or successor computer application maintained by the city of New York or state of New York, indicates, or the department has *314 been informed by a court or any other governmental entity, that such person:
“A. has been convicted of a violent or serious crime, or
“B. is identified as a possible match in the terrorist screening database.
“2. Nothing in this section shall affect the obligation of the department to maintain the confidentiality of any information obtained pursuant to paragraph one of this subdivision.”
In other words, an ICE detainer requesting extended detention based only upon a pending ICE investigation, such as Mr. Onadia’s detainer, or based upon no reason at all, could no longer serve as a legal basis for continued detention. The above referenced statute was enacted into law on November 22, 2011.
In addition to actions of the New York City Council, plaintiff has provided the court with a sampling of case law from jurisdictions across the nation, establishing that numerous courts have held that an individual’s Fourth Amendment right to be free from unreasonable seizure was violated when the person was held in custody based solely upon ICE detainers indicating that an investigation had been commenced relating to the detainees’ immigration status. Many such courts eventually found that the detainers did not constitute sufficient probable cause to warrant continued detention.[2]
Based on the foregoing, it is plaintiff’s position that by holding Mr. Onadia past his scheduled release date pursuant to the ICE detainer indicating that an investigation was pending, defendant violated his civil rights, and this forms the basis of the additional class causes of action set forth in the second amended complaint. Indeed, after engaging in extensive discovery, Mr. Onadia became aware of many other individuals who were also held past their scheduled release dates based upon the same or a substantially similar ICE detainer to his own. Moreover, plaintiff discovered that many detainers failed to provide any basis, whatsoever, for the detention (i.e., the detainer did not contain an “x” in a box indicating any basis for extended detention). Therefore, plaintiff seeks to certify a class of all persons who were detained based on these, possibly insufficient, detainers.
*315 Class Certification
CPLR 902 provides that a class action can only be maintained if the prerequisites promulgated by CPLR 901 (a) are met.
“Those prerequisites are (1) that the class is so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class predominate over questions of law or fact affecting individual class members (commonality); (3) the claims or defenses of the class representatives are typical of those in the class (typicality); (4) the class representatives will fairly and adequately protect the interests of the class [ ] [adequacy;] and (5) a class action represents the superior method of adjudicating the controversy (superiority). If the prerequisites set out in CPLR 901 (a) are met, the court, in deciding whether to grant class action certification should then consider the additional factors promulgated by CPLR 902 such as the interest of individual class members in maintaining separate actions and the feasability thereof; the existence of pending litigation regarding the same controversy; the desirability of the proposed class forum; and the difficulties likely to be encountered in managing the class action” (Pludeman v Northern Leasing Sys., Inc., 74 AD3d 420, 421-422 [1st Dept 2010] [citations omitted]).
“In view of the purposes to be served by the class action device and the ability to reverse or revise the status [of the class] . . . the interests of justice require that in a doubtful case [of] any error, if there is to be one, should be committed in favor of allowing the class action. . . . [I]nquiry on a motion for class action certification vis-a-vis the merits is limited to a determination as to whether on the surface appears to be a cause of action which is not a sham” (Brandon v Chefetz, 106 AD2d 162, 167-168 [1st Dept 1985] [internal quotation marks and citations omitted]).
On a motion for class certification, the court must be convinced that the proposed class is capable of being identified (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 137 [2d Dept 2008]). Further, whether a particular lawsuit qualifies as a class action rests within the sound discretion of the trial court. In exercising this discretion, a court must be mindful that the class certification statute should be liberally construed (Kudinov v Kel-Tech Constr. Inc., 65 AD3d 481, 481 [1st Dept 2009]).
*316 Numerosity
“CPLR 901 (a) provides that a class action may be maintained if, inter alia, . . . the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.” (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 137 [2d Dept 2008] [internal quotation marks omitted].) In adopting CPLR 901 (a), “the legislature contemplated classes involving as few as 18 members” (Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 399 [2014]). Further it has been held that numerosity is “presumed at a level of 40 members” (Consolidated Rail Corp. v Town of Hyde Park, 47 F3d 473, 483 [2d Cir 1995]). Here, plaintiff has submitted two affidavits of Nicholas Egleson, president of Paladin Consulting and Programming, an IT consulting company. Mr. Egleson reviewed a spreadsheet provided by the City that contains information relating to all inmates in DOC’s custody who had an ICE detainer issued on or after February 1, 2007. Mr. Egleson also reviewed a spreadsheet provided by defendant listing the date upon which those cases were “closed.” Mr. Egleson opined in his initial affidavit (submitted with plaintiff’s moving papers) that based upon his review of the spreadsheets, approximately 19,946 people with ICE detainers were held at least one day after they were otherwise eligible to be released. Mr. Egleson opines that the average number of additional days those 19,946 individuals were held in custody after their “case was marked closed” was 14.4 days with 2,261 people being held for over a month and 1,380 held over two months.
Defendant contends that Mr. Egleson’s conclusion is mistaken and submits the affidavit of Jorge Torres, a captain in the NYC DOC. Captain Torres opines that Mr. Egleson’s initial analysis is flawed because it assumes that the 19,946 inmates were sent directly to ICE following their discharge. Captain Torres indicates that many of those inmates may have actually been sent to state custody to begin serving their criminal sentence or to other jurisdictions for other charges. Under such circumstances, Captain Torres asserts that the ICE detainers would not be honored, since those inmates were not otherwise eligible for release. In his reply papers, plaintiff submits a second affidavit of Mr. Egleson wherein Mr. Egleson explains that he reexamined the spreadsheet, with the concerns raised by Captain Torres in mind. In his reanalysis, Mr. Egleson limited his results to those with a discharge code of “INS” which he understood is the code used when an inmate is transferred to *317 ICE and also limited his results to those with a close out date before December 21, 2012.[3] Accounting for the two additional restrictions, Mr. Egleson concluded that the amount of detain-ers issued that requested continued detention based upon an ICE investigation having been commenced or based upon no reason at all, amount to an estimated 9,181. Therefore, Mr. Egleson opines that the putative class may be made up of 9,181 persons. While this number is lower than the class originally alleged in plaintiff’s moving papers, it falls well above 40 individuals that presumably satisfies the numerosity threshold. Therefore, the court finds that the numerosity requirement has been met. Indeed, the large number of potential class members are so numerous that joinder of claims is impractical (Englade v HarperCollins Publs., 289 AD2d 159 [1st Dept 2001]).
Commonality
“[Cjommonality is not merely an inquiry into whether common issues outnumber individual issues but rather ‘whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated’ ” (Pludeman v Northern Leasing Sys., Inc., 74 AD3d 420, 423 [1st Dept 2010]).
Here, defendant argues that the claims of Onadia are not common to all other putative class members because there was no single detainer form applicable to both Onadia and other former detainees, as the form was amended in 2011, 2012 and 2015. However, the putative class is limited to individuals detained before the form was changed on December 21, 2012. Plaintiff has submitted adequate evidence to establish that prior to 2012, only two other detainer forms were used, to wit, Mr. Onadia’s form and a subsequent form generated in 2011. However, as even defense counsel admits, both forms “contained essentially the same categories regarding a detainee’s status.” Mr. Onadia’s detainer indicates, “Investigation has been initiated to determine whether this person is subject to deportation from the U.S.,” whereas the 2011 revised form indicates, “Initiated an investigation to determine whether this person is subject to removal from the United States.” Therefore, the court finds defendant’s argument relating to the differences in Mr. *318 Onadia’s detainer and the detainer that was revised in 2011 to be unpersuasive. Additionally, Mr. Onadia does not seek to include persons who were detained based upon the form as revised in 2012 or 2015. Therefore, defendant’s argument concerning these more recent detainer forms is moot.
Defendant further contends that not all persons held pursuant to the detainer form issued against Onadia were held for the same reason. However, it is clear that the class sought to be certified does not create an umbrella under which all individuals held past their release date based upon any ICE detainer will be included in the class. Instead, the proposed class is limited to those individuals who were held beyond their release date based solely on a detainer that either (1) specifically indicated that an investigation had been commenced or was pending by ICE, or (2) failed to indicate a reason for the continued detention (i.e., no boxes checked on the detainer form). Those individuals whose detainers indicated that the individual should be held based on a warrant of arrest, notice to appear, or a deportation/removal order, are not part of the class sought to be certified.
With this in mind, the core common questions of fact relating to the proposed class include: (a) whether the DOC had a policy or practice of holding persons beyond their scheduled release date based on a detainer indicating that an investigation had been commenced, or that failed to specify a reason for continued detention; and (b) whether each of the class members were actually detained longer than their scheduled release date based upon said detainers. Furthermore, common questions of law predominate the putative class. For example, in the event a class is certified, every member will present the court with the common questions of law such as: (a) whether the alleged practice by the DOC of holding detainees based solely upon the aforementioned detainers constituted a violation of the class member’s rights provided by the Fourth and Fourteenth Amendments of the US Constitution; (b) whether the aforementioned practice violated class members’ rights provided by article I, §§ 6 and 12 of the New York State Constitution; (c) whether the practice resulted in false imprisonment of the class members; and (d) whether the practice constituted negligence or gross negligence. Moreover, defendant’s defenses raise more common questions of law including: (a) whether defendant is immune from suit; (b) whether the statute of limitations defense applies; and (c) whether any claims are barred by General Municipal Law §§ 50-e and 50-i.
*319 Based on the foregoing, it is clear that common issues of law and fact dominate this matter. Defendant’s additional challenges to the commonality requirement are also unpersuasive. First, that certain class members may pose some questions of fact that are unique to them is an insufficient basis for denying class certification. In fact, “commonality cannot be determined by any mechanical test and that the fact that questions peculiar to each individual may remain after resolution of the common questions is not fatal to the class action” (City of New York v Maul, 14 NY3d 499, 514 [2010] [internal quotation marks omitted]). Moreover, the “potential for different individual damages claims is not a valid reason for denying class action status” (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 142 [2d Dept 2008]; see also Englade v HarperCollins Publs., 289 AD2d 159 [1st Dept 2001]). Further, “[t]o the extent that there may be differences among the class members as to the degree in which they were damaged, the court may try the class aspects first and have the individual damage claims heard by a special master or create subclasses” (Godwin Realty Assoc. v CATV Enters., 275 AD2d 269, 270 [1st Dept 2000]).
In addition to the above, distinctions in filing a notice of claim does not defeat commonality. In this matter, in granting plaintiff’s previous motion to amend the complaint, the court held that, “[f]or purpose of plaintiff’s application and without passing on the sufficiency of the Notice of Claim, plaintiff is an adequate class representative given his federal claims” (court order dated Oct. 10, 2012). Further, the Court of Appeals has held that there is a public interest exception to the notice of claim requirement in regards to alleged civil rights violations.
“In the area of civil rights, [the Court of Appeals] has recognized an important exception to the notice requirement. In Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd. (35 NY2d 371, 380), it held that notice of claim requirements do not apply to actions brought ‘to vindicate a public interest.’ All actions brought to enforce civil rights can be said to be in the public interest (see Newman v Piggie Park Enterprises, 390 US 400, 402.) But, actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group are deserving of special treatment. The interests in their resolution on the *320 merits override the State’s interest in receiving timely notice before commencement of an action” (Mills v County of Monroe, 59 NY2d 307, 311 [1983]).
Notwithstanding the above, “compliance with the notice of claim requirements of General Municipal Law § 50-e is not necessary to recover for alleged violations of a party’s civil rights under 42 USC § 1983” (Matter of Rattner v Planning Commn. of Vil. of Pleasantville, 156 AD2d 521, 525 [2d Dept 1989]). Moreover, issues relating to the sufficiency of the notice of claim goes to the merits of the claims. However, as discussed below in relation to the statute of limitations defense, a motion for class certification is not an opportunity for the court to address the merits of class claims (see Eisen v Carlisle & Jacquelin, 417 US 156 [1974]; In re Initial Pub. Offering Sec. Litig., 471 F3d 24, 41 [2d Cir 2006]).
Based on the foregoing, the court finds that plaintiff has met the requirement of commonality.
Typicality
A plaintiff’s claim is typical of the other class members if, “it arises out of the same course of conduct as the class members’ claims and is based on the same cause of action” (Pruitt v Rockefeller Ctr. Props., 167 AD2d 14, 22 [1st Dept 1991]). Typicality is a question of the nature of the claim and not of the damages suffered. The commonality and typicality requirements tend to merge into one another and both require the court to consider whether “maintenance of a class action is economical and [that] the named plaintiff’s claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence” (Marisol A. v Giuliani, 126 F3d 372, 376 [2d Cir 1997]).
As described above, the court has already determined that Mr. Onadia’s claims and the claims of the other potential members of the defined class, all arise out of the City’s alleged policy of holding individuals in custody based solely on the de-tainers as described above. Based on the foregoing, the court also finds that plaintiff has established typicality of claims.
Adequacy
“The factors to be considered in determining adequacy of representation are whether any conflict [s] exists between the representative and the class members, the representative’s familiarity with the lawsuit and his or her financial resources, *321 and the competence and experience of class counsel” (Ackerman v Price Waterhouse, 252 AD2d 179, 202 [1st Dept 1998]). Initially, the City does not challenge the competence and experience of plaintiff’s attorney acting as class counsel. In addition, plaintiff’s attorneys have submitted ample proof to establish their competency and experience in representing the class. Therefore, the court finds that plaintiff’s attorney are sufficiently experienced and competent to represent the class herein.
Defendant does challenge Mr. Onadia’s adequacy of representation of other class members. Specifically, defendant asserts that Mr. Onadia has a limited understanding of the issues as well as limited financial resources. As for the financial resources inquiry, plaintiff’s counsel has assumed the full risk of this litigation. Therefore, Mr. Onadia’s personal financial condition is irrelevant (Wilder v May Dept. Stores Co., 23 AD3d 646 [2d Dept 2005]). Further, defendant’s argument that Mr. Onadia does not comprehend the issues in this matter is not persuasive. As stated above, when the plaintiff moved to amend his complaint to include causes of action on behalf of the class, the court specifically held that plaintiff is an adequate representative of the class. Additionally, Mr. Onadia has submitted an affidavit that paints a picture of an individual who is aware that his, and other class members’ civil rights may have been violated by the DOC’s alleged practice of continued detainment on the basis of a possibly insufficient detainer. Moreover, while Mr. Onadia may not have completely understood defense counsel’s questioning during his deposition, its seems that he is sufficiently apprised of the facts and issues of law herein. Notwithstanding the foregoing, it is not reasonable to expect that a layman, such as Mr. Onadia, would have detailed knowledge of the matters at issue, and a general awareness of the claims of the class qualifies him to act as a class representative (Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985]). Based on the affidavit of Mr. Onadia, the court finds that he has a general understanding of the class claims and therefore, he will be an adequate representative of the class.
Superiority
The final requirement under CPLR 901 (a) asks whether a class action is “superior to other available methods for the fair and efficient adjudication of the controversy.” In determining superiority, courts consider a number of factors, including the possibility of excessive costs and delays resulting from multiple *322 lawsuits seeking the same or similar relief, inconsistent rulings, and whether the aggregation of the claims will allow individuals with small claims judicial relief that would otherwise be impractical (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 146-147 [2d Dept 2008]). Here, the alleged deprivation of civil rights stems from the DOC’s supposed practice of improperly detaining individuals based upon an insufficient detainer. Many of the purported class members may be low income and marginalized members of society who lack knowledge and familiarity with the court system. There is little incentive for many of the class members to commence individual actions, and not certifying the class could lead to inconsistent rulings on the same questions of facts and laws.
Based on the foregoing, the court finds that plaintiff has established that class certification is superior to other available methods for fair and efficient adjudication of the controversy.
CPLR 902—Additional Factors
CPLR 902 provides that in addition to the section 901 prerequisites that must be established, the court must consider the following facts in determining whether to certify a class action: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the impracticability or inefficiency of prosecuting or defending separate actions; (3) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (4) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (5) the difficulties likely to be encountered in the management of a class action.
In this regard, defendant asserts that the plaintiff cannot: (1) establish that other class members have an interest in maintaining a separate action or that it is even feasible in light of possible statute of limitations issues, and (2) demonstrate that the difficulties in “managing this class action” would be “manageable.” However, the court finds that these arguments do not warrant denial of the plaintiff’s motion. Initially, the concerns raised by defendant as to potential class members who were detained based on the revised form are moot as described above. Additionally, the only issue before the court at this time is whether it is appropriate to certify the class. Defendant’s concerns and arguments regarding the applicable statute of limitations is premature. Eventually, the court will *323 rule on the defendant’s affirmative defense of limitations, however now is not the time. Indeed, a motion for class certification is not an occasion for examining the merits of the case (see Eisen v Carlisle & Jacquelin, 417 US 156 [1974]; In re Initial Pub. Offerings Sec. Litig., 471 F3d 24, 41 [2d Cir 2006]). Finally, defendant’s complaint that it will be difficult to cull through thousands of inmate files to determine what detainer forms were used and what boxes were checked on such detain-ers does not create a basis for denying certification. The court finds this argument unavailing as it basically boils down to an assertion that, because certification may create additional, detail-oriented work for the parties’ attorneys and/or the parties herein, the class action is unmanageable. However, the City offers no support for this contention and the court finds the same unpersuasive.
Based on the foregoing, the motion is granted and this action is hereby certified as a class action. The putative class being defined as follows:
“All persons who were detained by the New York City Department of Correction, during the limitations period, beyond the individual’s scheduled release date, despite all other conditions for the person’s release being satisfied, and based solely on a detainer issued by U.S. Immigration and Customs Enforcement prior to December 21, 2012 that either (1) indicated that an investigation had been commenced by ICE, or (2) failed to indicate a reason for continued detention (i.e. no boxes checked on the detainer form).”

. As discussed hereinbelow, the proposed class has been redefined as follows:
“All persons who were detained by the New York City Department of Correction, during the limitations period, beyond the individual’s scheduled release date, despite all other conditions for the person’s release being satisfied, and based solely on a detainer issued by U.S. Immigration and Customs Enforcement prior to December 21, 2012 that either (1) indicated that an investigation had been commenced by ICE, or (2) failed to indicate a reason for continued detention (i.e. no boxes checked on the detainer form).”

. See generally People ex rel. Swenson v Ponte, 46 Misc 3d 273 (Sup Ct, Kings County 2014); Miranda-Olivares v Clackamas County, 2014 WL 1414305, 2014 US Dist LEXIS 50340 (D Or, Apr. 11, 2014, No. 3:12-cv-02317-ST); Morales v Chadbourne, 996 F Supp 2d 19 (D RI 2014).

. An issue relating to commonality has been raised in light of the fact that the detainer form issued against Onadia was discontinued as of December 21, 2012. Therefore, as discussed more fully infra, the proposed cutoff date for the putative class is December 21, 2012.